# United States Court of Appeals
## For the First Circuit

No. 04-2596

LUZ H. OLMEDA; OMAR MARRERO-OLMEDA;
KATHLEEN MARRERO-OLMEDA,

Plaintiffs, Appellees,

v.

HERMENEGILDO ORTÍZ-QUIÑÓNEZ; JOSÉ AUGER-MARCHAND;
CARMEN MODESTA CARRERO-TORRES; WANDA MARRERO-VELASQUEZ; and
REINALDO ALEGRÍA-RODRÍGUEZ, in their personal capacities;
ANGEL D. RODRÍGUEZ, in his personal and official capacity as
President of the Puerto Rico Planning Board,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Schwarzer,[*] Senior District Judge.

Eduardo A. Vera-Ramírez with whom Roberto Sanchez-Ramos,
Secretary of Justice, Salvador Antonetti, Solicitor General, Jo Ann
Estades-Boyer, Director, Federal Litigation Division, Department of
Justice, Eileen Landrón-Guardiola and Landrón & Vera, LLP were on
brief for appellants.

[*]Of the Northern District of California, sitting by
designation.

Carlos R. Ramírez with whom John F. Nevares and John F. Nevares & Associates, PSC were on brief for appellees.

————————————————

January 12, 2006

————————————————

**BOUDIN**, **Chief Judge**.  Luz Olmeda, who holds degrees in law and economics, has been employed by the Puerto Rico Planning Board for over twenty years.  The Board is a legislatively created agency of the Puerto Rico government, comprising part of the governor's office and endowed with a broad mandate in the field of economic and social planning for Puerto Rico.  23 L.P.R.A. §§ 62a, 62c.  Among other things, it is charged with crafting zoning and land use regulations, preparing long-term social and economic development plans, and advising the governor and legislature on general planning and development issues.  Id. § 62j.

From 1995 to 2001, Olmeda held the position of Director of the Economic and Social Planning Program.  In 2000, a new governor representing the Popular Democratic Party ("PDP") was elected, replacing a governor who belonged to the New Progressive Party ("NPP").  Olmeda, who is affiliated with the NPP, requested and was granted a transfer to the career position of Assistant Planning Executive I; her transfer was made effective on July 1, 2001.  Her salary was set at $3,591 per month plus a "differential" of $931 per month, granted because of her expertise.

According to Olmeda, after the election and upon assuming her new position, she was subjected to adverse action based on her political affiliation.  She says (in her present complaint) that she was largely stripped of her duties, which were reassigned to an employee of the Board affiliated with the PDP; that she was subject

-3-

to verbal abuse from two Board employees; that other officials failed to respond to Olmeda's complaints; that her salary differential was eliminated after an audit asserted that she was not entitled to it; and that in August 2002 she was transferred to a new position as Acting Coordinator of the Office of Federal Proposals of the Economic Analysis Subprogram.

On August 20, 2002, Olmeda filed this action, seeking several million dollars in actual and punitive damages under both section 1983, 42 U.S.C. § 1983 (2000), and Puerto Rico law. The main federal claim was for political discrimination.[1] The defendants included two successive heads of the Board who had been appointed by the new governor and several other employees said to have participated in these wrongs either by action or, in failing to provide relief, by inaction.

After initial discovery, including a deposition of Olmeda, the defendants moved for summary judgment, arguing that they were entitled to qualified immunity (Olmeda also cross-moved for partial summary judgment in her favor on her political discrimination claims). Defendants contended, inter alia, that under the governing case law on the federal political discrimination claim, Olmeda's position was not one protected

---

[1]Though Olmeda's complaint also made a passing reference to a due process claim against the defendants, Olmeda has never explained the nature of the claim, nor did she defend the claim when it was challenged by defendants in their motion for summary judgment.

against politically motivated adverse action.  The district court denied the defendants' motion (as well as Olmeda's cross-motion), saying only that there were "contested issues of material fact." The defendants have now sought review in this court.

Qualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful.  Rodríguez-Rodríguez v. Ortiz-Vélez, 391 F.3d 36, 41 (1st Cir. 2004).  The immunity is not merely from damages, but (with some qualifications) from having to endure a trial.  So-- as a court-made exception to the final judgment rule--immediate appeals are permitted from such denials.  Id. at 39-40.

One wrinkle is that the Supreme Court has disallowed such an immediate appeal where the district court's denial of immunity rested upon its determination--whether right or wrong--that immunity turned on a disputed issue of material fact.  Johnson v. Jones, 515 U.S. 304, 319-20 (1995).  Yet, whatever the district court's reasoning, immediate appellate review is still permitted if immunity is required as a matter of law regardless of how the factual issue is resolved.  Rodríguez-Rodríguez, 391 F.3d at 39-40.

In the present case, there may well be disputed factual issues as to whether Olmeda suffered significant adverse employment action and, if so, whether this was motivated at least in part by hostility to her political affiliation.  However, the defendants'

-5-

main claim on appeal--that Olmeda's job is not constitutionally protected against political discrimination--does not require that any disputed factual issue be decided.  To that extent, we have jurisdiction to consider defendants' claim to immunity, regardless of the district court's own reasons for denying the motion.  Id. at 40.

There is one more complication.  Although qualified immunity requires merely that a reasonable official could believe that his conduct was lawful, the Supreme Court has directed that the qualified immunity inquiry itself begin by asking whether on the facts alleged there is a constitutional violation at all. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Saucier's inversion has its own logic, see id., but it has the potential to cause problems where answering this first question in the abstract is difficult. See Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69-70 (1st Cir. 2002).

A first amendment right to protection against political discrimination was recognized by the Supreme Court about thirty years ago in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980).  See also Rutan v. Republican Party of Ill., 497 U.S. 62 (1990).  Where improper motive is shown, the employee is protected against significant adverse employment action--this is a loose formulation--but the right exists only

where the job is one for which political affiliation is an improper criterion.

Elrod and Branti involved employees engaged in comparatively routine work, and protection was not extended to jobs for which "party affiliation is an appropriate requirement." Branti, 445 U.S. at 518. Were the rule otherwise, no new administration would be able effectively to implement its own policies. The federal claim does not turn on whether a state has chosen to afford civil service protection to a job, see Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 133 (1st Cir. 2005), but on Branti's "appropriateness" requirement, which is extensively glossed in the case law in this circuit.

In a nutshell, protection does not extend to positions which potentially "involve decision making on issues where there is room for political disagreement on goals or their implementation" and where the jobholder is a policymaker, confidential assistant, spokesman, or similar officeholder. Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir. 1996) (internal quotation marks omitted); see also Flynn v. City of Boston, 140 F.3d 42, 44-45 (1st Cir. 1998), cert. denied, 525 U.S. 961 (1998). Actual functions of the job, not titles, control, id. at 44, and an official description of job functions is a presumptively reliable basis for determining those functions, Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 8 (1st Cir. 2001).

In this instance, there is a detailed official job description for Olmeda's position. Olmeda alleged no facts contradicting the description; indeed, at her deposition, she seemingly endorsed the description. Once an understanding of the functions is ascertained, it is a question of law whether they invoke constitutional protection. Flynn, 140 F.3d at 44. If not, Olmeda may have civil service or other protection under Puerto Rico law since she converted to a "career" position, but the Elrod and Branti line of cases does not apply and the defendants are protected.

That the Board has policy involvement at the highest level is beyond dispute. By statute, the Board is charged with "guiding the integral development of Puerto Rico" in order to best promote "health, safety, order, coexistence, prosperity, defense, culture, economic stability and general welfare," in addition to crafting policies for "the process of development," "the distribution of population," "the use of land," and "public improvements." 23 L.P.R.A. § 62c. The statute spells out extensive duties in analysis and coordination of other agencies. See, e.g., id. §§ 62j, 62l.

This merely sets the stage. If Olmeda were a staff typist or a receptionist, she would still likely be protected. Her duties are outlined in the official seven-page "description of position," which describes the "essential duties" of her position

as follows (the "Program" referred to in this list is "Economic and Social Planning"; the "Subprogram" is "Economic Analysis"):

Plans, coordinates, directs, supervises and evaluates the work of the personnel that performs highly technical and specialized studies related to the activities developed in the Subprogram.

Gives guidance and advises the Director of the Program and Subprogram on theoretical and technical aspects related to the national accounts and other jobs performed in the subprogram.

Advises the Director of the Subprogram about the implementation of public policy, law, regulations, norms and procedures that are applicable to the same.

Conducts meetings with the coordinators and technical assistants of the Subprogram and with its designated consultants, to discuss and coordinate aspects of work planning with amendments received in the Subprogram.

Participates in the preparation and analysis of different special missions regarding economic impact, news commentaries, special Bills and others.

Represents the Board in committees, forums, seminars, conferences and other activities related to their field, as designated.

Analyzes, evaluates and issues opinions and recommendations regarding reports, projects and proposed laws and other documents that are referred.

Studies, analyzes and evaluates norms, regulations, instructions and complex situations related to activity field and submits reports or discusses action alternatives and specific recommendations with Supervisor.

Participates in the selection, training and evaluation of designated personnel.

Welcomes visitors and officials from Puerto Rico and other countries whenever required.

Establishes contacts with public and/or private entities in order to coordinate issues related to the job.

Helps prepare the economic Report for the Governor and other publications prepared in the Subprogram.

Participates in the preparation of the Budget Petition and in the Subprogram work plan.

Prepares and submits periodic reports on the work done to the Director of the Subprogram.

Represents the Board in public and administrative hearings where issues related to the field of work are discussed, as required.

Goes to training and development activities and to meetings of orientation or discussion of work plans, as required.

Does other duties as assigned.

The cases have not been able to come up with a terse formula or standard for describing policy-related positions that are outside the constitutional constraint. Yet as we observed in Flynn, our circuit has "regularly upheld against First Amendment challenge the dismissal on political grounds of mid- or upper-level officials or employees who are significantly connected to policy-making." 140 F.3d at 45. "[I]t is enough that the official be involved in policy, even if only as an adviser, implementer, or spokesperson." Id. at 46.

Olmeda's job description makes clear that she is an official, that she is involved in policymaking at least as an adviser, and that she is expected on occasion to serve as a representative of the Board itself. Olmeda emphasizes her technical training and its utility in her job, and we accept that this is so. But an employee otherwise involved in policy is not protected merely because the employee is "guided in some . . . functions by professional or technical standards." Id.

Olmeda's job description outlines a number of policy-oriented duties: the occupant "[a]nalyzes, evaluates and issues opinions and recommendations regarding reports, projects and proposed laws and other documents that are referred" and "[s]tudies, analyzes and evaluates norms, regulations, instructions and complex situations related to activity field and submits reports or discusses action alternatives and specific recommendations with Supervisor." This is not the work of a typist or receptionist.

The best indication of where the cases draw the line is a sampling of unprotected jobs. E.g., Galloza v. Foy, 389 F.3d 26, 31-32 (1st Cir. 2004) (regional tax administrator); Flynn, 140 F.3d at 45-46 (overseers of multiple community centers); Zayas-Rodriquez v. Hernandez, 830 F.2d 1, 3 (1st Cir. 1987) (audit director who counseled a senior official about policy matters and supervised employees). By contrast, as we pointed out in Flynn, the Supreme

-11-

Court cases have tended towards protection for "a floor supervisor, a guard, a process server, an assistant public defender, a rehabilitation counselor, a road equipment operator, a garage worker, and a dietary manager."  Id. at 45 (citing the pertinent cases).

On such a spectrum, Olmeda's case is not close: she is not federally protected against political discrimination and the federal damage claims are barred by qualified immunity.  Olmeda also seeks injunctive relief, which is not barred by qualified immunity, but our ruling on Olmeda's status removes the basis for federal-claim injunctive relief as well.  Olmeda's claims under Puerto Rico law remain open, but can be dismissed without prejudice if the district court chooses.  28 U.S.C. § 1367(c) (2000).

The district court's order denying qualified immunity is vacated and the matter remanded for proceedings consistent with this decision.  Each side shall bear its own costs on this appeal.

It is so ordered.