# United States Court of Appeals
## For the First Circuit

No. 05-2215

KEVIN VALDIZÁN,

Plaintiff, Appellee,

v.

VICTOR RIVERA-HERNANDEZ, ETC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Lynch, Circuit Judges.

Celina Romany, with whom Celina Romany Law Offices was on brief, for appellant.
Francisco R. Gonzalez, with whom Bufete F. R. Gonzalez was on brief, for appellee.

April 17, 2006

**SELYA**, **Circuit Judge**.    "Qualified immunity protects public officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005) (citations and internal quotation marks omitted).   A public official's assertion of a qualified immunity defense engenders a tripartite analysis.  See Saucier v. Katz, 533 U.S. 194, 207-08 (2001); Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004).  The first component of that analysis involves ascertaining whether the plaintiff's averments, if true, establish a violation of a right secured by federal constitutional or statutory law.  See Limone, 372 F.3d at 44.  The case at hand turns on an application of this facet of the qualified immunity doctrine.[1]

The plaintiff here, Kevin Valdizán, is a quondam employee of the Puerto Rico Department of Labor.  He claims that he was cashiered in 2001 because of his political leanings.  After a modicum of pretrial discovery, the Secretary of the Puerto Rico Department of Labor moved for summary judgment on the ground of qualified immunity.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).    After the district court denied the motion, this interlocutory appeal ensued.

---

[1]Because the first component of the analysis is dispositive here, see text infra, we need not elaborate upon the other two steps in the pavane.

-2-

Generally, our appellate jurisdiction is limited to the review of final orders and judgments. See 28 U.S.C. § 1291. Interlocutory orders, such as those denying summary judgment, are not normally appealable as of right when entered. See, e.g., Camilo-Robles v. Zapata, 175 F.3d 41, 44-45 (1st Cir. 1999). A qualified immunity defense, however, raises special considerations. Thus, when a public official qua defendant seeks the prophylaxis of that doctrine and unsuccessfully pursues summary judgment, he sometimes may appeal without awaiting the entry of final judgment. See id. at 45. In broad-brush terms, the denial of such a motion is immediately appealable if the central issue is a purely legal one. See Johnson v. Jones, 515 U.S. 304, 318 (1995). It is not immediately appealable if the central issue is "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Id. at 320.

In many situations in which a qualified immunity defense has been raised, a district court's denial of summary judgment will not fit neatly into one category or the other. This is so, in part, because although the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact," that circumstance alone "does not mean that every such denial of summary judgment is nonappealable." Behrens v. Pelletier, 516 U.S. 299, 312-13 (1996) (emphasis in original). For example, the court of appeals retains jurisdiction to entertain an

immediate appeal in "situations in which the district court assumes a set of facts and decides, as a matter of law, that those facts will not support a qualified immunity defense." Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998). In that event, "the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for [a] (purely legal) reason." Johnson, 515 U.S. at 319.

This case represents such a situation. The plaintiff charges, in substance, that the Secretary transgressed his First Amendment rights by firing him from his non-tenured position — "Executive II" — because of their differing political allegiances. The district court discerned a genuine issue of material fact as to whether or not the record contained significantly probative evidence linking political animus to the plaintiff's discharge. We are not at liberty to reexamine that conclusion on an interlocutory appeal. See Camilo-Robles, 151 F.3d at 8.

Still, that determination does not entirely close the door to appellate jurisdiction. In reaching its decision, the district court necessarily assumed that a patronage dismissal, if proven, would be unconstitutional. As long as we do not question the district court's determination that a reasonable jury could find that political animus comprised the impetus behind the plaintiff's ouster, we remain free to examine, on an interlocutory appeal, whether that fact makes any cognizable legal difference.

-4-

This means that, here, we remain free to examine the logically antecedent (and completely separate) question of whether the plaintiff occupied a position in the government agency for which political affiliation is an appropriate qualification. See, e.g., Galloza v. Foy, 389 F.3d 26, 29-30 (1st Cir. 2004). We turn to that discrete issue.

This inquiry starts — and in this case ends — with an inspection of the functions of the position in question, aimed at determining whether it is a policymaking position. See Branti v. Finkel, 445 U.S. 507, 518 (1980) (framing the relevant inquiry as "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved"); Elrod v. Burns, 427 U.S. 347, 367 (1976) (plurality op.) (holding that, under the First Amendment, "patronage dismissals" must be restricted to "policymaking positions"); see also Rutan v. Repub. Party of Ill., 497 U.S. 62, 74 (1990) (reaffirming Elrod/Branti rule and stating that "government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the basis of their political views"). On this issue, the material facts are undisputed: the plaintiff served in a "trust" position labeled "Executive II," and we may rely upon the official job description for the position to determine whether it is one for which political

loyalty is an appropriate qualification. See, e.g., Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1260 (1st Cir. 1987) ("Whenever possible, we will rely upon [the written job description] because it contains precisely the information we need concerning the position's inherent powers and responsibilities . . . .").

The applicable job description[2] prominently includes "[p]rofessional, executive and administrative financial responsibilities" of a high order. In addition, the position specifically requires the holder's participation in "the formulation and implementation of public and finance policy" at the project, commonwealth, and federal levels. And, finally, the job description authorizes the holder to exercise "ample liberty in the use of his judgment" in the performance of his administrative functions. These stipulations leave no doubt but that, under our precedents, the position is policymaking in nature. See, e.g., Galloza, 389 F.3d at 31-32; Cordero v. De Jesus-Mendez, 867 F.2d 1, 14 (1st Cir. 1989); Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 242-46 (1st Cir. 1986) (en banc). As such, political affiliation is, as a matter of law, an appropriate criterion for

---

[2]The official job description in the record is in Spanish. However, the Secretary's statement of material facts not in dispute, see D.P.R. R. 56 (formerly D.P.R. R. 311.12), contains translations of pertinent excerpts. The plaintiff has not challenged either the accuracy or the completeness of those translations. Accordingly, we accept them unconditionally.

continued employment and the position, for federal constitutional purposes, is fairly subject to the changing winds of patronage.

The plaintiff's only real response to this line of reasoning is that the <u>actual</u> duties he performed as "Executive II" were more technical than the official job description suggests, and, therefore, that his position was not truly policymaking in nature. Our case law makes it abundantly clear, however, that a court must "focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." <u>Jimenez Fuentes</u>, 807 F.2d at 242; <u>accord</u> <u>Cordero</u>, 867 F.2d at 9; <u>Mendez-Palou</u>, 813 F.2d at 1258. The plaintiff offers no reason why that general rule should not govern here. Accordingly, the job description trumps the plaintiff's self-serving account of his actual duties.

We need go no further. The only claim presently before us is the plaintiff's First Amendment claim for money damages, premised on political discrimination, against the head of the agency that employed him. Because the plaintiff occupied a high-level policymaking position, there is no First Amendment violation even if raw politics prompted his release. The Secretary was, therefore, entitled to qualified immunity. <u>See</u> <u>Duriex-Gauther</u> v. <u>Lopez-Nieves</u>, 274 F.3d 4, 9-11 (1st Cir. 2001). Hence, the decision of the district court denying the Secretary's motion for summary judgment on the ground of qualified immunity is reversed,

and the case is remanded for further proceedings consistent with this opinion.

**Reversed and remanded**.