# United States Court of Appeals
## For the First Circuit

No. 15-2278

ANA MARÍA LÓPEZ-ERQUICIA,

Plaintiff, Appellee,

v.

ÁNGELA WEYNE-ROIG,

Defendant, Appellant,

OFFICE OF THE INSURANCE COMMISSIONER OF PUERTO RICO;
JANE DOE; JOHN DOE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Thompson, Kayatta, and Dyk,[*]
Circuit Judges.

Luis N. Blanco-Matos for appellant.
Claudio Aliff-Ortiz, with whom Eliezer Aldarondo-Ortiz,
Sheila Torres-Delgado, Eliezer A. Aldarondo-López, David R.
Rodríguez-Burns, and Aldarondo & López-Bras were on brief, for
appellee.

---

[*] Of the Federal Circuit, sitting by designation.

January 25, 2017

**KAYATTA**, **Circuit Judge**.    Ana María López-Erquicia ("López") claims that Puerto Rico's Insurance Commissioner, Ángela Weyne-Roig ("Weyne"), eliminated López's job as a director within the Office of the Insurance Commissioner ("OIC") on account of López's political affiliation.    Weyne now seeks interlocutory review of the district court's rejection of her argument that her qualified immunity defense entitled her to summary judgment on López's federal damages claim.    Finding that a reasonable official in Weyne's position could have understood the First Amendment not to protect López against politically motivated removal from her job, we reverse.

## I.  Background

In denying Weyne's motion for summary judgment, the district court properly viewed the record in the light most favorable to López, and assumed the facts to be as supported by López's competent evidence.    Neither party claims any error in that regard.    We therefore take the facts "as given," filling any gaps by similarly viewing the record "in the light most favorable to [López]."  Johnson v. Jones, 515 U.S. 304, 319 (1995).

Under Puerto Rico law, "career" employees may only be terminated for cause, whereas "trust" or "confidential" employees "can be selected and removed at will."  See P.R. Laws Ann. tit. 3, §§ 1462e, 1465; see also id. § 1462c.    In 2004, after working as an attorney at the OIC for a number of years, López was promoted

to the career position of Director of the Anti-Fraud Special Investigations ("AFSI") Division. In January 2009, she was appointed by then-Insurance Commissioner Ramón Cruz-Colón ("Cruz") to the trust position of Auxiliary Commissioner of Legal Affairs. Several months later, López received an additional trust appointment to the position of Chief Deputy Commissioner, thereby elevating her to second-in-command of the agency. Both Cruz and López were affiliated with the New Progressive Party, as was the Governor of Puerto Rico at the time.

In November 2012, Puerto Rico elected the gubernatorial candidate of the Popular Democratic Party. The Governor-elect subsequently announced that he would be nominating Weyne to serve as his Insurance Commissioner. In January 2013, López was reinstated to her previous career position as AFSI Director. Around the same time, Weyne assumed her position as Insurance Commissioner. Shortly thereafter, Weyne summoned López to her office to inform her that "things would be changing." López responded by pointing out that her AFSI Director position was a career position, and that she intended to continue serving in the position "with excellence." Nevertheless, López alleges that over the course of the next several months, she was subject to various forms of politically motivated harassment and disparate treatment.

On May 29, 2013, Weyne informed López that Weyne was eliminating the AFSI Division and transferring López's employees

- 4 -

to the Market Conduct Division. Because the division of which she was the director ceased to exist, López was reclassified as a Principal Attorney and assigned to the Legal Affairs Division. Although López retained the same salary and fringe benefits, her duties and the nature of her work changed substantially.

Soon thereafter, López filed this lawsuit against Weyne, the OIC, and certain unknown OIC staff members (collectively, the "Defendants"), alleging that the job reassignment and alleged harassment violated the First and Fourteenth Amendments of the U.S. Constitution, various provisions of Article II of the Puerto Rico Constitution, and various provisions of Puerto Rico law. Under 42 U.S.C. § 1983, López sought damages from Weyne personally for the alleged violations of federal law.

The district court granted the Defendants' motion for summary judgment as to López's due process claims, but denied it as to her remaining claims, including her federal political discrimination claims for damages, declaratory relief, and injunctive relief. In so doing, the court rejected Weyne's principal argument that any rational jury would have to conclude that López simply lost her job as a collateral effect of a broader reorganization of the agency. The district court also rejected an alternative defense raised by Weyne: that even if the reorganization could be interpreted as an action directed at López because of her political affiliation, Weyne was entitled to

qualified immunity on the § 1983 damages claim because a reasonable official could have thought that López's position fell within the exception to the First Amendment's bar on political removals recognized in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980).[1] That denial of the qualified immunity defense was immediately appealable for the purpose of allowing review of the district court's assessment of the law as applied to the assumed facts. See Cady v. Walsh, 753 F.3d 348, 358–59 (1st Cir. 2014). After Weyne promptly sought such review, we granted Weyne's request for a stay of the proceedings below and denied López's request for summary disposition. We now turn to the substance of the appeal.

## II.  Discussion

Under our two-part test for qualified immunity in political discrimination cases, we ask (1) "whether the nature of [the] position was such that defendants were entitled to consider . . . political affiliation as a job qualification," and (2) "even if they were not, whether a reasonable offic[ial] at the time would have understood patronage dismissal [or demotion] to be

---

[1] This "exception is reserved for instances in which political affiliation is an 'appropriate requirement for the effective performance of the public office involved,'" Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (quoting Branti, 445 U.S. at 518), and "helps to ensure that elected representatives will not be hamstrung in endeavoring to carry out the voters' mandate," id. (citing Elrod, 427 U.S. at 367).

barred." López-Quiñones v. P.R. Nat'l Guard, 526 F.3d 23, 25 (1st Cir. 2008). For ease of reference, we refer to these two questions, respectively, as the "merits" question and the "reasonableness" question. We treat each question as a question of law, to be answered de novo. Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014).

The preferred approach is to decide the merits question first, reaching the reasonableness question only if the merits question is resolved against the defendant. See López-Quiñones, 526 F.3d at 25 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). In this case, though, we face an unusual twist: in her answer to the complaint, Weyne admitted that party affiliation was not an appropriate requirement for López's position. Hence, the district court deemed the merits question "uncontested." And on appeal, while protesting that she could not have conceded a point of law, Weyne offers no developed argument for why that is so. Like the district court, then, we also treat the merits question as "uncontested."

This concession nevertheless does little to narrow the scope of our inquiry. To answer the reasonableness question-- whether a reasonable official at the time could have understood López's job to be unprotected--we pretty much have to run through the entire merits analysis anyhow. We do so not to answer the uncontested merits question, but rather to see how close a question

it is.  Furthermore, the test we apply in assessing the closeness of the question "is objective, rather than subjective; we focus on what a reasonable [official] could have believed, not on allegations about what [the official] actually believed."  Eves v. LePage, 842 F.3d 133, 142 (1st Cir. 2016); see also López-Quiñones, 526 F.3d at 27.  Though qualified immunity does not shield "the plainly incompetent or those who knowingly violate the law," Eves, 842 F.3d at 140-41 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam)), an official cannot "fairly be said to 'know' that the law forbade conduct not previously identified as unlawful," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  With this twist explained, we turn to examining López's job to see how a reasonable official could have viewed it.

In conducting this examination, we try to determine the extent to which "the position involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation."  Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc), cert. denied 481 U.S. 1014 (1987).  We begin "with an inspection of the functions of the position in question."  Valdizán v. Rivera-Hernandez, 445 F.3d 63, 65 (1st Cir. 2006) (citing Branti, 445 U.S. at 518)).  We "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office

holder whose function is such that party affiliation is an equally appropriate requirement." Jimenez Fuentes, 807 F.2d at 242. We also look to secondary factors such as relative pay, title, and legal or legislative classification to further inform our analysis. See López-Quiñones, 526 F.3d at 28; Fontane-Rexach v. P.R. Elec. Power Auth., 878 F.2d 1493, 1497 n.4 (1st Cir. 1988); Jimenez Fuentes, 807 F.2d at 246.

In analyzing López's job functions, both parties rely primarily on the "Skills Profile" contained in the record. We do so as well. See Olmeda v. Ortíz-Quiñónez, 434 F.3d 62, 66 (1st Cir. 2006) (citing Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 8 (1st Cir. 2001)) ("[A]n official description of job functions is a presumptively reliable basis for determining those functions."). The Skills Profile establishes that the AFSI Director performs "[m]anagerial work . . . of great complexity and responsibility . . . under the general supervision of the Deputy Supervision and Compliance Commissioner." Though the Deputy Commissioner "gives out specific instructions for the performance" of such work, the AFSI Director "[e]xercises initiative and individual judgment in the performance of . . . her duties."

The Skills Profile also sets forth the various "Duties and Responsibilities" of the position. Among other things, the AFSI Director "[p]lans, coordinates and supervises the work of the . . . [u]nit in order to prepare studies and conduct

investigations and research about the insurance industry." The AFSI Director "[c]oordinates with federal, local and state agencies, as well as with private information agencies that may assist in the investigative work" of the unit. The AFSI Director also "[d]evelops rules and procedures and interprets statutes and regulations related to . . . her area of responsibility." The AFSI Director not only "[c]ollaborates with and advises the Deputy Commissioner in matters related to the duties of the unit," but also "[s]ubstitutes for the Deputy Commissioner, when required."[2]

So, what are we to make of these functions? To answer that question, it is helpful to consider a sampling of other jobs that have qualified or not qualified for protection from politically motivated removal. As we pointed out in Flynn v. City of Boston, 140 F.3d 42 (1st Cir. 1998), "[t]he Supreme Court cases . . . granting or looking toward protection . . . have involved a floor supervisor, a guard, a process server, an assistant public defender, a rehabilitation counselor, a road equipment operator, a garage worker, and a dietary manager." Id. at 45 (citing pertinent cases). We ourselves have found similarly protected a "director of general services" who was responsible for inventory, maintenance, and related "mechanical" functions as well as the supervision of approximately thirty employees, López-

---

[2] The position of Deputy Commissioner is itself a trust position. See P.R. Laws Ann. tit. 26, § 237(1).

- 10 -

Quiñones, 526 F.3d at 26-27; an administrative aide to the assistant director of a municipal agency, Cordero v. De Jesus-Mendez, 867 F.2d 1, 14-15 (1st Cir. 1989); the "Cleaning Supervisor" of a municipality, id. at 16-17; and the "Internal Auditor" of a municipality, whose nonsupervisory job was to check all municipal payroll and financial records for errors, which he would then report to a superior, id. at 17-18.

Conversely, we have found unprotected the positions of Assistant Secretary of State for Protocol Affairs at the Puerto Rico State Department, who made recommendations to and counseled Puerto Rico's highest elected officials, Méndez-Aponte v. Bonilla, 645 F.3d 60, 67-68 (1st Cir. 2011); a municipal recreation commissioner with "considerable capacity to influence municipal decisions affecting parks and recreation," Foote v. Town of Bedford, 642 F.3d 80, 86 (1st Cir. 2011); an "administrator" who developed legal strategy on environmental law issues and cases for the Puerto Rico Electric Power Authority, Uphoff Figueroa v. Alejandro, 597 F.3d 423, 429-30 (1st Cir. 2010); a municipal police chief, Wilson v. Moreau, 492 F.3d 50, 53 (1st Cir. 2007); an "Executive II" in Puerto Rico's Department of Labor who participated in "the formulation and implementation of public and finance policy," Valdizán, 445 F.3d at 65-66; a regional tax administrator, Galloza v. Foy, 389 F.3d 26, 31-32 (1st Cir. 2004); associate directors of several community centers, Flynn, 140 F.3d

at 45-46; and an audit director who supervised employees and counseled a senior official about policy matters, Zayas-Rodriguez v. Hernandez, 830 F.2d 1, 3 (1st Cir. 1987).[3]

We need not precisely locate López's AFSI Director position on the spectrum established by the foregoing precedent. Rather, we need determine only whether that precedent "placed the . . . constitutional question beyond debate," Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011), i.e., whether it clearly established the position's constitutionally protected status. In making that determination, we find especially significant López's responsibility to "[d]evelop[] rules and procedures and interpret[] statutes and regulations" while "advis[ing]" and even "[s]ubstitut[ing] for the Deputy Commissioner." These job requirements suggest "that [López] is an official, that she is involved in policymaking at least as an adviser, and that she is expected on occasion to serve as a representative of the [OIC] itself." Olmeda, 434 F.3d at 67. Moreover, as in López-Quiñones --where we found a position constitutionally protected and yet the position's protected status not clearly established--López "headed the unit in question"; "some of [her] duties were broadly phrased

---

[3] We limit our sampling of cases to those decided before Weyne eliminated López's position because the reasonableness inquiry trains on the state of the law at the time of the challenged action, not at the time that the suit challenging the action is filed. See Harlow, 457 U.S. at 818; accord López-Quiñones, 526 F.3d at 25.

(even if seemingly less impressive in practice)"; she was "lightly supervised"; and she "reported directly to a political appointee." 526 F.3d at 28.

To be sure, López's position was not classified as a trust position, and "a legislature's classification system is . . . entitled to some deference." Jimenez Fuentes, 807 F.2d at 246. Nevertheless, our precedent makes clear that "[a]ctual functions of the job . . . control" our analysis. Olmeda, 434 F.3d at 66 (citing Flynn, 140 F.3d at 44); see also Duriex-Gauthier, 274 F.3d at 8. Here, those actual functions preclude us from finding that a reasonable official, even one familiar with the law,[4] would have found it clear that López's position fell inside the First Amendment's protective ambit. That, in turn, means that Weyne is

---

[4] The notion of a "reasonable" official is in some respects quite "artificial," as few officials will be familiar enough with the law to determine exactly what is "clearly established." Hallstrom v. City of Garden City, 991 F.2d 1473, 1483 (9th Cir. 1993); see also Amore v. Novarro, 624 F.3d 522, 535 (2d Cir. 2010) ("[T]he statement in Harlow that reasonably competent public officials know clearly established law[] is a legal fiction." (second alteration in original) (quoting Lawrence v. Reed, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting))). In reality, the reasonableness question combines a court's assessment of the law with an official's hypothetical application of that assessment to the relevant factors. Cf. Heien v. North Carolina, 135 S. Ct. 530, 541 (2014) (Kagan, J., concurring) (making the analogous observation, albeit in the "more demanding" context of determining when the Fourth Amendment permits seizures predicated upon mistakes of law, that "the test is satisfied when the law at issue is 'so doubtful in construction' that a reasonable judge could agree with the officer's [proffered] view" of the law (quoting The Friendship, 9 F. Cas. 825, 826 (C.C.D. Mass. 1812) (No. 5,125))).

immune to a federal claim for damages under § 1983, even if the reorganization was targeted at López because of her political affiliation.  See López-Quiñones, 526 F.3d at 27 ("[T]he abstract right of a non-policy-related employee to be free from politically motivated termination . . . is not enough to defeat qualified immunity.").[5]

### III.  Conclusion

We reverse the district court's denial of qualified immunity and remand for further proceedings consistent with this opinion.

---

[5] On appeal, López advances no claim that any conduct that occurred prior to her job reassignment entitles her to recover damages from Weyne even if her job reassignment does not.