**Zuleika CONCEPCION,
et al., Plaintiff(s)**

**v.**

**MUNICIPALITY OF GURABO,
et al., Defendants.**

**Civil No. 05–2264 (FAB).**

United States District Court,
D. Puerto Rico.

May 11, 2007.

Maria S. Kortright–Soler, M.S. Kortright Soler Law Office, San Juan, PR, Pedro R. Vazquez, III, Pedro R. Vazquez Law Office, Guaynabo, PR, for Plaintiffs.

Miguel A. Romero–Lugo, Romero, Rodriguez & Quijano, PSC, Maria Judith Surillo, Department of Justice, San Juan, PR, for Defendants.

### MEMORANDUM AND ORDER

BESOSA, District Judge.

 A District Court may refer pending dispositive motions to a Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party ad-

versely affected by the report and recommendation may file written objections within ten days of being served with the Magistrate Judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) *(citing United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(a)(b)(1). *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.,* 428 F.Supp.2d 4, 6 (D.P.R. 2005) *(citing LaCedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

On May 24, 2007, the United States Magistrate Judge issued a Report and Recommendation in this case, recommending that the Defendants' Motion to Dismiss (Docket No. 18)[1] and the Supplement Motion to Dismiss (Docket No. 19) be granted in part and denied in part. No objections have been filed.

The undersigned, however, has made an independent examination of the record in this case and **ADOPTS** the magistrate

---

1. Specifically, defendants Victor Ortiz–Diaz, Rafael Rodriguez, Magali Roman–Castro and Merelyn Santiago, in their personal capacities.

judge's findings and recommendations as the opinion of this Court.

Accordingly, defendants Roman's and Santiago's request for dismissal of the procedural due process claims is hereby **DENIED**; defendants Roman's and Santiago's request for dismissal of section 1983 claims against them based on lack of personal involvement is hereby **DENIED**; Defendants' request for dismissal on qualified immunity grounds is hereby **DENIED**; Plaintiffs Roman's and Santiago's request for dismissal of the conspiracy claim is **DENIED AS MOOT**; plaintiffs' **substantive due process** claims are hereby **DISMISSED WITH PREJUDICE**. Partial judgment shall enter accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MARCOS E. LOPEZ, Unites States Magistrate Judge.

### I. PROCEDURAL BACKGROUND

On December 7, 2005, plaintiffs Zuleika Concepción–Alamo ("Concepción"), Quintilio Colón ("Colón"), Jahaira Sánchez ("Sánchez"), Lilliam Velázquez ("Velázquez") and Sandra Cortez ("Cortez") (collectively, "Plaintiffs"), filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against: (1) the Municipality of Gurabo ("Gurabo"); (2) Mr. Víctor Ortiz–Díaz ("Ortiz"), its Mayor; (3) Mr. Rafael Rodríguez ("Rodríguez"), Gurabo's City Administrator; (4) Ms. Magali Román–Castro ("Román"), Gurabo's Former Director of Human Resources; and (5) Ms. Merelyn Santiago ("Santiago"), Gurabo's Current Director of

Human Resources (collectively, "Defendants"). Docket No. 1. Co-defendants Ortiz, Rodríguez, Román and Santiago are being sued in their personal and official capacities.[1] Plaintiffs seek redress for the alleged violation of Plaintiffs' constitutional rights under the First Amendment to the U.S. Constitution as applied to the States under the Due Process Clause of the Fourteenth Amendment. Pendent supplemental jurisdiction under the laws of the Commonwealth of Puerto Rico are premised on the same alleged actions, to wit: Article II, Sections 1, 6 and 7 of the Constitution of the Commonwealth Puerto Rico, breach of contract under the Civil Code of Puerto Rico, tort claims under Article 1802 of the P.R. Civil Code, 31 P.R. Laws Ann § 3151, Law 100, 29 P.R. Laws Ann § 146, *et seq.*, and claims under the Commonwealth's Municipal Personnel System established by the Autonomous Municipalities Act, 21 P.R. Laws Ann. § 4001 *et seq.* Docket No 1.

Plaintiffs assert in the Complaint three causes of action. The first cause of action under 42 U.S.C. § 1983 states that Defendants acted with callous indifference and reckless disregard in illegally, unlawfully and intentionally violating Plaintiffs' constitutional rights secured under the First and Fourteenth Amendments to the U.S. Constitution, and the laws of the Commonwealth of Puerto Rico. For the significant emotional harm, injuries and material damages that Plaintiffs claim to have suffered as a result of these violations, each of them requests compensation in an amount of no less than one million dollars ($1,000,-

---

**1.** Although the Complaint states that these co-defendants are being sued in their personal and official capacities, this fact is not stated in the summonses served upon co-defendants Rodríguez, Román and Santiago. *See* Dockets No. 3, 5, 13. The summonses served upon these co-defendants only mention their names, in contrast with the summons served upon Ortiz, which makes clear that he is being sued in his personal and official capacities. *See* Docket No. 4. The Municipality of Gurabo was served with summons through Ortiz. *See* Docket No. 6.

000.00) each, plus an equal amount in liquidated damages pursuant to Law 100. *Id.,* ¶¶ 5.1–5.8. Through the second cause of action, Plaintiffs request reinstatement to their positions and reimbursement for lost wages and back pay since the date of their termination and/or reduction of salaries, including, but not limited, to medical insurance and benefits, Social Security contributions, retirement contributions, pension, 401–K plans, stock ownership valuations and sick/annual leave balance since January 2005. *Id.,* ¶¶ 6.1–6.4. Through the third cause of action, Plaintiffs request an award of one million dollars ($1,000,000.00) for punitive damages. *Id.,* ¶¶ 7.1–7.3. Finally, Plaintiffs claim that Defendants have acted with temerity and are therefore liable for any pre-judgment interest, costs and attorney fees. *Id.,* ¶¶ 8.1–8.3

On June 5, 2006, co-defendants Ortiz, Rodríguez, Román and Santiago filed a Motion to Dismiss (Docket No. 18) requesting dismissal of "the Complaint in its entirety against Magali Román Castro and Merelyn Santiago" on the grounds that the Complaint fails to state a conspiracy claim, a substantive due process claim, and a valid Section 1983 claim.[2] On June 12, 2006, Ortiz, Rodríguez, Román and Santiago filed a Supplement to Motion to Dismiss (Docket 19), alleging as an additional ground for dismissal of the Complaint that said co-defendants are entitled to qualified immunity.[3] In both the Motion to Dismiss and the Supplement to Motion to Dismiss, co-defendants appear in their personal capacities and without submitting to the jurisdiction of this Court.

On June 19, 2006, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss ("Opposition") claiming that the grounds for dismissal raised by Defendants in the Motion to Dismiss and the Supplement to Motion to Dismiss are without merit. Docket No. 20.

Pursuant to the Referral Order issued by the Court on February 26, 2007 (Docket No. 22), this matter was referred to the undersigned for a Report and Recommendation on the Motion to Dismiss, the Supplement to Motion to Dismiss and the Opposition to said motions. Dockets No. 18–20.

## II. FACTUAL BACKGROUND

This is a political discrimination suit involving several members affiliated and active with the Popular Democratic Party ("PDP"), all of which claim to be municipal career employees whose employment tenure with Gurabo predates the November 2004 general elections held in Puerto Rico. In said elections, co-defendant Ortiz, a member of the New Progressive Party ("NPP"), was elected Mayor of the Municipality of Gurabo. The incumbent mayor was Mr. José A. Rivera, a member of the Popular Democratic Party ("PDP"). Docket No. 1, ¶ 1. 1.

According to the Complaint, once in office, Ortiz began a systematic pattern and policy of discrimination against Plaintiffs by taking adverse employment actions on account of their association and affiliation to the PDP and to former mayor Mr. José

---

2. Co-defendants Ortiz and Rodríguez appear in this motion but do not request dismissal of the Complaint against them. The Motion to Dismiss is limited to requesting dismissal of the Complaint only against Román and Santiago. In such circumstances, the Court fails to see what standing do Ortíz and Rodríguez have, if any, to request dismissal of the Complaint against Román and Santiago.

3. Since in the Motion to Dismiss Ortiz and Rodríguez do not request dismissal of the Complaint against them, the Court will only consider their request for dismissal on the qualified immunity grounds they assert in the Supplement to Motion to Dismiss. *See* Docket No. 19.

A. Rivera which was widely known in the community. These actions included *de facto* demotions, where co-defendants were left idling with virtually no work, reassignment to inferior positions, salary reductions and, in some cases, termination of employment. Plaintiffs claim that these actions were without cause or justification, and that they were taken without providing appropriate pre-deprivation remedies, such as a hearing, before Defendants engaged in said action. Plaintiffs also assert that Defendants' actions were unjustified, illegal, unreasonable, arbitrary, "conscience shocking" and constitute an abusive use of Defendants' powers under color of law and authority. *Id.*, ¶¶ 1. 2, 1.3.

It is under this scenario that Plaintiffs allege the following facts pertaining to each of them.

**1) Zuleyka Concepción**

Since February 2004, Concepción held the position of Supervisor I. She supervised and was responsible for the day to day operation of the Child Care Center. Her salary and the Child Care Center's budget derived from federal funds from the Child Care and Development Fund administered by the Administration for the Care and Integral Development of the Commonwealth of Puerto Rico's Department of Family. She claims that she was an employee under contract but that she had employment rights as a permanent employee. *Id.*, ¶¶ 4.4, 4.5.

According to the 2004–2005 Child Care Center's budget, which had been approved by former mayor Mr. José A. Rivera and the Department of Family, Concepción's monthly salary was $1,928.00, beginning on January 1, 2005. But as soon as Ortiz took office, he refused to pay Concepción the agreed salary and ordered that her salary be reduced to $1,628.00 per month. *Id.*, ¶¶ 4.6, 4.7.

Moreover, Concepción claims that Defendants carried out a scheme to force her to resign by divesting her of the authority over the Child Care Center. She was also denied access to the Center beyond working hours. Persons with lesser rank, but of the same political affiliation as Ortiz, were not subjected to such restrictions. *Id.*, ¶¶ 4.8, 4.9.

These allegedly "intolerable conditions" created, according to the Complaint, a hostile work environment that amounted to constructive discharge by the Defendants, forcing her to resign to her position on August 12, 2005. In her resignation letter, she informed Ortiz that her decision was based on the total divestiture of her responsibilities and the municipality's breach of contract with respect to the terms and conditions of her employment. On August 16, 2005, Ortiz sent Concepción a letter accepting her resignation. Concepción claims that on said letter, Ortiz admitted that she had a right to receive a salary of $1,928.00. *Id.*, ¶¶ 4.11, 4.12.

Concepción asserts that the reasons proffered by the Defendants to justify the reduction in her salary, namely, that Gurabo had a shortfall of money, was a pretext because the moneys to pay her salaries came from federal funds and not from the municipality's budget. *Id.*, ¶ 4.13.

As a result of these "egregious intentional discriminatory actions", Concepción claims to have sustained, in addition to loss of wages, pain and suffering as she was forced to resign from her position and accept another employment at a significantly reduced salary. Concepción states that Defendants should have provided her with pre-deprivation remedies, namely, a hearing, before reducing her salary and that Defendants' failure to do so violated her rights under Section 1983 and the

Fourteenth Amendment's right to due process of law. *Id.*, ¶¶ 4.14, 4.15.

### 2) Quintilio Colón

Colón has a bachelor's degree in finance and accounting. From 1975 through 1993, Colón worked for Gurabo. Thereafter, he worked as the Director of Finance of the Municipality of Trujillo Alto until 1997. From 1997 through 2001 he worked for the Municipality of Caguas as the Chief of the Public Revenue Division, which is a career position. From 2001 through 2004, Colón worked as Gurabo's Director of Finance, which is a trust position. Colón is also Gurabo's PDP Electoral Commissioner since 2001. Therefore, he claims that his political affiliation with the PDP was known by Defendants prior to Ortiz's election as Gurabo's mayor. *Id.*, ¶¶ 4.16–4.19.

Due to the change of administration following the general elections of November 2004, Colón requested reinstatement to his career position in December 2004, in order to vacate and make available to Ortiz the trust position he held as Gurabo's Director of Finance. Gurabo's Office of Human Resources reinstated Colón to the position of Program Supervisor II, with a monthly salary of $2,838.80. On January 19, 2005, however, Colón was notified that he had been reassigned to "Subsidized Rent Official", an allegedly inferior position, and that his salary would be $2,158.00 per month. That same date, Defendants also ordered him to take a forced leave of 30 days. *Id.*, ¶¶ 4.19–4.23.[4] Colón claims that the net effect of these actions is that he has been left idling or, at best, performing entry level accounting clerk's work. *Id.*, ¶ 4.25.

Colón states that Defendants' actions constitute a *de facto* demotion, not only financially but also in terms of job, position, prestige and responsibilities. He asserts that said actions also amount to an arbitrary taking of his property, namely his salary and position, which was effectuated without providing prior notice or an opportunity to present his arguments or without holding a hearing to determine the legality of these actions. *Id.*, ¶¶ 4.21–4.27.

### 3) Jahaira Sánchez

Sánchez began her employment career with Gurabo on February 2001 when she was hired as a "Housing Technician". On July 2003, she was reassigned to the position of "Subsidized Rent Officer", earning a salary of $1,424.00. Her salary was paid directly from federal funds received from the Section 8 Housing Program. She always received the highest possible performance evaluations and was never subjected to disciplinary employment actions. *Id.*, ¶¶ 4.28–4.29, 4.32.

Among her duties as a "Housing Technician" and/or "Subsidized Rent Officer", she was responsible for supervising personnel assigned to the Section 8 Housing program, receiving and processing information of said program's participants, referring participants to the appropriate administrative agencies of the Commonwealth of Puerto Rico, assisting housing inspectors and others. *Id.*, ¶¶ 4.28.

Sánchez claims that once Ortiz took Office, she was divested of all her major functions and relegated to simply performing data entry. She also asserts that her

---

**4.** Colón also claims that his physical working area was changed from a private office to an open space next to the entrance to the common area of the Federal Programs Division, where every time the main door was opened, it collided with his desk. He was placed in this space although there were cubicles available in other places that were not in plain view. Finally, Colón asserts that after January 2005, new employees have been hired at a higher classification, with higher salaries and with private offices. Docket No. 1, ¶ 4.24

work was frequently plagiarized by Defendants, who would either take credit or assign it to other employees for work they did not perform. She also accuses Defendants of not allowing her to attend continued education seminars and conferences directly related to her work, nor to attend conferences offered by the Housing and Urban Development Agency (HUD). Moreover, Sánchez claims that she was ordered not to contact HUD officers and to return annual plans, audit reports, manuals, publications (such as the Federal Code of Regulations) and other work-related materials. *Id.*, ¶¶ 4.33, 4.34.[5]

As a result of these events, Sánchez had to seek stress related medical treatment on January 2005. She took two weeks of sick leave, but Defendants attempted to charge her with absence without leave. Sánchez challenged the charge, but never received a response to her objections. *Id.*, ¶ 4.35.

Sánchez also claims that on September 8, 2005, she was "verbally abused, bullied and berated without justification or reason" by co-defendant Rodríguez. The Complaint states as follows:

> More specifically, Mr. Rodríguez began cursing and screaming at her, by saying "why the hell were there some fucking ('cabrona' in Spanish) notebooks with this damn logo still in the office with the prior mayor's logo ... you damned 'populares' are doing things ass backwards ('con las patas' in Spanish) you populares simply can't do anything right ... and I want them destroyed god-dammit" ("puñeta" in Spanish). Ms. Sánchez attempted to explain that such documents simply had not been disposed of before because of the office relocation to a different area; however, Mr. Rodríguez

simply refused to hear any explanation. Such action was on account of Plaintiff Sánchez's political association and affiliation.

*Id.*, ¶ 4.37.

Again, Sánchez had to take sick leave due to these events, which she characterizes as "abusive and discriminatory treatment". On September 30, 2005, while she was still convalescing on sick leave, Defendants fired her alleging her employment contract had expired. After her termination, Sánchez's functions were being performed by an NPP member. *Id.*, ¶¶ 4.38, 4.40.

Sánchez argues that she had a legal entitlement to continued employment and that Defendants violated her property rights secured under Section 1983 and the Fourteenth Amendment's due process of law by taking the adverse employment actions she complains of without providing her with appropriate pre-deprivation remedies, such as a hearing, before Defendants engaged in said actions. *Id.*, ¶¶ 4.39, 4.41.

### 4) Lilliam Velázquez

Velázquez was hired in May 2004 as an Office System Administrator I. Although her position was transitory, she claims that she performed the job functions of a career employee as she was the only clerical support staff in her office.

Velázquez claims that pursuant to the personnel laws and regulations of the Commonwealth of Puerto Rico, a displacement of an employee, including temporary or transitory employees, must be approved by the Commonwealth's Office of Human Resources ("ORHELA" in its Spanish acronym) and that, pursuant to those laws and regulations, temporary or transitory

---

**5.** Sánchez also claims that on January 2005 she was ordered to physically abandon her private office space and move to the entrance of the common area of the Federal Programs Division. Docket No. 1, § 4.34

employees that do not qualify for a change to permanent employee status were granted transitory employment rights subject to availability of funds for a period of three (3) years commencing on June 30, 2004. In fact, she asserts that memoranda contained in her personnel file prior to Ortiz taking office showed that ORHELA had advised Gurabo that although she did not yet qualify for conversion to a permanent status, she had a clear entitlement to remain employed in her position. *Id.,* ¶¶ 4.45, 4.47.

Velázquez avers that during the transition process between the outgoing and incoming mayor, employees affiliated with the NPP told her that since "the PDP abused the NPP, now you will see what's coming". Additionally, Ms. Dorma Irizarry, former Chief of Public Relations, informed her that co-defendant Rodríguez had said to her that once she was gone, no one wold protect Velázquez because she was a member of the PDP.[6] Velázquez also claims that once Ortiz took office, Defendants began a systematic pattern of discrimination against her by divesting her of her day to day functions, relegating her to performing menial type work not commensurate with her experience or job description, and leaving her idling without no work whatsoever during the last two months prior to her termination, which occurred on June 30, 2005. Her position was filled with an NPP member. *Id.,* ¶¶ 4.48–4.51.

Vázquez states that her termination was without cause and constituted an intentional adverse employment action on account of her affiliation and association to the PDP in violation of her First Amendment rights. Moreover, she claims that Defendants violated her property rights secured

under Section 1983 and the Fourteenth Amendment due process of law by taking the adverse employment actions she complains of without providing her with pre-termination remedies, such as a hearing, before Defendants engaged in said actions. *Id.,* ¶¶ 4.52–4.54.

### 5) Sandra Cortez

Cortez has been employed with Gurabo since 1989 as a "Receptionist and Telephone Clerk". Her duties comprised answering the telephone and receiving visitors in the municipal hall. Her political affiliation to the PDP is widely known and she has been actively engaged in public political activities such as rallies, marches and caravans in the past. *Id.,* ¶¶ 4.55, 4.56.

Cortez contends that, as part of the pattern of political discrimination towards PDP employees exhibited by the Defendants upon Ortiz taking office in January 2005, she was transferred to the municipal Department of Art and Culture because there was a need for her services in said department. She claims that she was replaced by a temporary employee affiliated with the NPP and that, as a result of the transfer, she has been left idling with no work whatsoever. Cortez alleges that Defendants violated her property rights secured under Section 1983 and the Fourteenth Amendment due process of law by her transfer without providing her with pre-deprivation remedies, such as a hearing, before Defendants transferred her. *Id.,* ¶¶ 4.57, 4.* [sic].

### III. MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure

---

**6.** Velázquez claims that her political affiliation to the PDP was widely known in Gurabo for her active participation in the "Young

PDP groups" and in public political activities such as rallies, marches and caravans. *Id.,* ¶¶ 4.42–4.44.

12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colón,* 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.*

An evaluation of the merits of a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all well-pleaded factual claims and indulge all reasonable inferences in Plaintiff's favor. *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Thus, a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999).

In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in Plaintiff's favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson,* 83 F.3d at 3.

## IV. LEGAL ANALYSIS

### A. Dismissal of Conspiracy Claims against Co–Defendants Román and Santiago.

Co-defendants Román and Santiago seek to dismiss a purported claim of conspiracy to violate Plaintiffs' rights because it is supported only on vague, conclusory and general allegations which are insufficient to withstand a motion to dismiss inasmuch as "Plaintiffs have failed to document with any degree of particularity any agreement among the appearing defendants to commit an illegal act." Docket No. 18, page 3.

In their Opposition, Plaintiffs acknowledge that "there is no conspiracy cause of action raised in the Complaint." Docket No. 20, page 19. In view of Plaintiffs' admission that the Complaint does not state a conspiracy cause of action against the Defendants, this Court need not entertain an analysis of whether Plaintiffs have asserted or not a cognizable claim of conspiracy. This issue is moot. As Plaintiffs themselves acknowledge, since the Complaint does not assert a conspiracy claim, there is none to dismiss. Therefore, it is recommended that Román and Santiago's request for dismissal of the purported conspiracy claim be DENIED AS MOOT.

### B. Dismissal of Due Process of Law Claims against Co–Defendants Román and Santiago.

Plaintiffs claim that Defendants violated their property rights secured by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. According to the allegations of the Complaint, Plaintiffs were municipal career employees with protected and proprietary interests and/or rights in their employment and in the terms and conditions thereof. Plaintiffs aver that Defendants' failure and refusal to provide them with appropriate pre-deprivation remedies (in the form of "some sort of hearing") before taking the adverse employment actions described in the Complaint constitute a deprivation of those rights in violation of the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment prohibits a state

from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This guarantee has both substantive and procedural components. The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to "impos[e] liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis,* 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

■ In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures. *See e.g., Fuentes v. Shevin,* 407 U.S. 67, 80–82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Procedural due process requires that the procedures provided by the state in effecting the deprivation of life, liberty or property are adequate in light of the affected interest. *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991).

■ In the context of claims for termination of employment, it is well-established that the Due Process Clause of the Fourteenth Amendment guarantees public employees who have a property interest in continued employment the right to at least an informal hearing before termination. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d 255, 262 (1st Cir.1987). Such property rights are not created by the Constitution, however, but by "existing rules or understandings that

stem from an independent source such as state law." *Loudermill,* 470 U.S. at 538. Under Puerto Rico law, a "career" position is a constitutionally protected property interest. *Kauffman v. P.R.T.C.,* 841 F.2d 1169, 1173 (1st Cir.1988).

■ Plaintiffs in this case claim that they are or were municipal career employees, with protected and proprietary interests and/or rights in their employments and in the conditions thereof, and that they were subjected to adverse employment actions, ranging from *de facto* demotions to reassignment to inferior positions, reduction in salaries and, in some cases, termination of employment. Specifically, Plaintiffs allege that Defendants failed to give them prior notice or the opportunity to be heard at a hearing before taking said adverse employment actions. Taking these allegations as true, as this Court is required to do in order to evaluate the Motion to Dismiss, the Court concludes that the Complaint alleges sufficient facts to support a procedural due process claim against Defendants.

Román and Santiago acknowledge that Plaintiffs have asserted procedural due process claims and do not request dismissal of such claims. Instead, they argue that these claims are being brought as if they were substantive due process of law claims. It is these substantive due process of law claims which Román and Santiago move the Court to dismiss, arguing that Plaintiffs have inappropriately disguised their procedural due process claims as substantive due process of law claims, and that these substantive due process claims do not satisfy the standard established for these types of claims insofar none of the allegations in the Complaint are "truly outrageous, uncivilized and intolerable". Docket No. 18, pages 4–5.

The Complaint actually reads, in its pertinent part, as follows: "Defendants actions violate Plaintiffs' rights … under the Due Process Clause (substantive and procedural) of the Fourteenth Amendment of the Constitution of the United States …" Docket No. 1, ¶ 1.3. Plaintiffs, thus, are alleging violations to both substantive and procedural due process, claiming that the actions alleged in the complaint are "conscience shocking". *Id.*

 "In order to shock the conscience, conduct must at the very least be 'truly outrageous, uncivilized, and intolerable.'" *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir.1999). Conscience shocking conduct has been found in extreme cases entailing physical or psychological abuse, or significant interference with a protected relationship. *E.g., Rochin v. California*, 324 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forcibly pumping suspect's stomach for drugs), *Harrington v. Almy*, 977 F.2d 37 (1st Cir.1992) (conditioning employment on taking highly intrusive physical test of sexual arousal) and *Grendell v. Gillway*, 974 F.Supp. 46 (D.Me.1997) (officer told girl that her parents would be arrested and she would be in trouble if she did not inform officers her parents' drug use). *See McConkie v. Nichols*, 446 F.3d 258, 261 (1st Cir.2006).

After reviewing the allegations of the Complaint, the Court concludes that, even if true, they do not rise to the conscience-shocking level of uncivilized conduct necessary to validate a substantive due process claim. Therefore, it is recommended that Román's and Santiago's request for dismissal of the procedural due process claims be DENIED.[7] It is recommended, however, that plaintiffs' substantive due process claims be DISMISSED.

## C. Dismissal of Section 1983 Claims against Co–Defendants Román or Santiago on Lack of Personal Involvement Grounds.

Román and Santiago also request dismissal of the Complaint because it "contains no allegations supporting a finding that Magali Román Castro or Merelyn Santiago were personally involved in the deprivation of [Plaintiffs'] constitutional rights". They claim that, in order to be liable under Section 1983, a defendant must have been personally involved in the conduct that deprived the plaintiff's constitutional and civil right. According to Román and Santiago, Plaintiffs' failure to allege that they were personally involved in the acts described in the Complaint warrants its dismissal. Docket No. 18, pages 6–7.

Plaintiffs oppose this request on several grounds: (1) the Complaint expressly states claims of violation to Plaintiffs' constitutional rights against "all Defendants" (including Román and Santiago), as is evidenced by the numerous paragraphs of the Complaint that Plaintiffs transcribed in the Opposition; (2) the Complaint contains a plethora of paragraphs and allegations regarding Defendants' conduct, where such conduct could not have been carried without the knowledge of approval of either

---

7. Román and Santiago also request dismissal of Plaintiffs' Fifth Amendment due process claims arguing that the Fifth Amendment only applies to actions by the federal government, and there are no federal actors or actions present in this case. Docket No. 18, page 7, § IV. The Complaint clearly and repeatedly states that Plaintiffs' claims are being brought under the Due Process Clause of the Fourteenth Amendment, not the Fifth Amendment, to the U.S. Constitution. *See e.g.,* Docket No. 1, ¶ § 1.3, 4.15, 4.27, 4.41, 4.54, 4.* [sic], and 5.4. Therefore, since the Complaint does not state due process claims under the Fifth Amendment to the U.S. Constitution, it is recommended that Román's and Santiago's request for dismissal of the purported Fifth Amendment due process claims be DENIED.

Román and Santiago; (3) Román and Santiago engaged in all the adverse employment actions suffered by Plaintiffs; and (4) from a legal standpoint, the position of Director of Gurabo's Human Resources Office, which Román formerly held and Santiago currently holds, is an executive level trust position, with independent legal obligations carrying particularized, nondelegable and independent responsibilities, the violations of which provide an independent legal basis to include them as proper and indispensable parties to the action. Docket No. 20, pages 3–16.

Section 1983 of Title 42 of the United States Code provides, in its pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

 The very purpose of this section was to interpose the federal courts between the States and the people, as guardians of the people's federal rights. *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Section 1983 is not in itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred. *Rodríguez–García v. Municiplaity of Caguas*, 354 F.3d 91, 99 (*citing Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *Local Union v. Massachusetts*, 377 F.3d at 75 (1st Cir.2004).

 It is well settled that in order for a claim to be cognizable under Section 1983, the complaining party must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct constitutes a deprivation of a constitutional right or a federal statutory right. *See Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Martínez–Rodríguez v. Colón–Pizarro*, 54 F.3d 980 (1st Cir.1995); *Martínez–Vélez v. Simonet*, 919 F.2d 808, 810 (1st Cir.1990); *Vicenty Martell*, 48 F.Supp.2d 81, 89 (D.P.R.1999).

 This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

 In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutiérrez–Rodríguez*, 882 F.2d at 562 (1989); *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989); and (2) that the defendant's conduct was intentional, *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutiérrez–Rodríguez*, 882 F.2d at 562.

 The Complaint contains no specific or explicit allegations exclusively as to Román's or Santiago's personal involvement or participation in the acts described

therein. The Complaint, however, contains many allegations of actions or omissions performed by "all Defendants". *See, e.g.,* Docket No. 1, ¶¶ 3.2(c) and (d), 4.3, 4.8, 4.11–4.13, 4.15, 4.21, 4.23–4.27, 4.33, 4.35, 4.41, 4.47, 4.50–4.51, 4.54, 4.57 and 4.60. In essence, these actions and omissions include the following: (1) the generalized and particular knowledge by Defendants of Plaintiffs' affiliation and even activism in political activities of the PDP; (2) the execution of a policy of targeting PDP employees, such as Plaintiffs, for intentional adverse and discriminatory personnel actions; (3) the reduction of Concepción's and Colón's salaries and position level; (4) the implementation of a scheme to force Concepción to resign her position; (5) forcing Colón to go on leave for a period of 30 days charged to his annual leave and depriving him of his private office without due process of law, non assignment of duties to him and not reinstating him to a position similar to the last position held as career employee, in violation of state law which mandates such reinstatement; (6) depriving codefendant Sánchez of her office space, non assignment of duties to her, the demeaning treatment by co-defendant Rodríguez who screamed, yelled and cursed at her, and her discharge from employment in order to be replaced with an en employee affiliated to the NPP; (7) the discharge of co-defendant Velázquez for political reasons despite ORHELA's advice to the Municipality that she had a statutory right to remain in her position for three years in order to have preference for any position of her level that might become available; and (7) the transfer of co-defendant Cortez from the only position of Receptionist in the Municipality Hall main building to a space with no work in the Cultural and

Arts Center and her replacement with a new NPP employee. *Id.*

Plaintiffs explain in the Opposition that these allegations are sufficient to infer the active and concerted participation of co-defendants Román and Santiago.[8] Plaintiffs further assert in the Opposition that, prior to taking the adverse employment actions, Román and/or Santiago would have had to be consulted in order to determine the terms and conditions of employment of each plaintiff prior to taking the adverse actions described herein. Plaintiffs submit that such actions could not have been carried without the help, assistance, cooperation, participation and/or approval Román and Santiago, making personally involved in the deprivation of Plaintiffs' rights. Docket No. 20, pages 13, 16.

Indulging all reasonable inferences in Plaintiffs' favor, the Court concludes that the Complaint states sufficient allegations from which a reasonable fact finder could infer Román's and Santiago's personal involvement in the actions described in the Complaint. Whether the alleged participation of Román and Santiago actually deprived Plaintiffs of their constitutional rights might be an issue that could become more suitable for adjudication through summary judgment motions at a later stage. Therefore, it is recommended that Román's and Santiago's request for dismissal of the Section 1983 claims against them based on lack of personal involvement be DENIED.

### D. Dismissal of Section 1983 Claims against Ortiz, Rodríguez, Román and Santiago on Qualified Immunity Grounds.

On June 12, 2006, co-defendants Ortiz, Rodríguez, Román and Santiago filed a

---

8. Román was Gurabo's Director of Human Resources from January 2005. Co-defendant Santiago became Director of Human Resources on or about June 2005. Docket No. 1, ¶ 3.2(c) and (d).

Supplement to Motion to Dismiss (Docket 19) to include an allegation of entitlement to qualified immunity as an additional ground for dismissing the Complaint. According to these co-defendants: (1) "the [C]omplaint simply fails to survive the qualified immunity defense because plaintiff has failed to state a claim for conspiracy under § 1983 or a substantive due process claim"; (2) plaintiffs "failed to allege a *prima facie* case of political discrimination, or anything else, against Magali Román Castro and Merelyn Santiago"; and (3) co-defendants Ortiz and Rodríguez did not violate "any constitutional right of plaintiffs, and any actions taken by them were in accordance with the law, rules and regulations in effect at that time." Docket No. 19, pages 2–3 (emphasis in original). Plaintiffs opposed this request stating that the Complaint survives a qualified immunity attack because it charges Defendants with violations of Plaintiffs' clearly established constitutional rights, of which co-defendants Ortiz, Rodríguez, Román and Santiago should have been aware. Docket No. 20, pages 20–25.

■■■ "Government officials performing discretionary functions generally are shielded from liability for civil damages [under § 1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." *Santana v. Calderón*, 342 F.3d 18, 23 (1st Cir.2003) (*quoting Ryder v. United States*, 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)).

■■■ When determining if a public official is entitled to qualified immunity, a three pronged-test is employed to inquire: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004). Ortiz, Rodríguez, Román and Santiago allege that they enjoy qualified immunity because the first prong is lacking and, consequently, there is no need to even address the second and third prongs of the *Mihos* test.

■■■ Having reached the conclusion, however, that the Complaint does contain sufficient allegations to support claims of political discrimination under the First Amendment and violations to procedural due process under the Fourteenth Amendment to the U.S. Constitution, the Court differs from said co-defendants' arguments. Furthermore, as to the other prongs of the qualified immunity test, the right to be free from any sort of political discrimination is a clearly established constitutional right which a reasonable government employee is aware of. *E.g., Guillemard Gionorio v. Contreras Gómez*, 322 F.Supp.2d 153, 161–62 (D.P.R.2004); *Acevedo–García v. Vera–Monroig*, 351 F.3d 547, 565 (1st Cir.2003) (Clearly established law precludes government officials from discharging civil or "career" employees for politically-motivated reasons, precluding qualified immunity for government officials alleged to have done so); *see also Torres v. González*, 71 F.Supp.2d 14, 23 (D.P.R. 1999). Therefore, it is recommended that Ortiz, Rodríguez, Román and Santiago's request for dismissal on qualified immunity grounds be DENIED.[9]

9. Although co-defendants Ortiz, Rodríguez, Román and Santiago are being sued in their

## V. CONCLUSION

In view of the foregoing, it is recommended that the Motion to Dismiss (Docket No. 18) and Supplement to Motion to Dismiss (Docket No. 19) be DENIED IN PART and GRANTED IN PART. In particular, it is recommended that the request for dismissal of the substantive due process claims be GRANTED. All the remaining requests for dismissal contained in said motions should be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir. 1986).

April 24, 2007.

personal and official capacities, they appear in the Motion to Dismiss and the Supplement to Motion to Dismiss only in their personal capacities to request dismissal of the Complaint "in its entirety". Docket No. 18, page 7; Docket No. 19, page 3. Even if these codefendants were entitled to qualified immunity, this would result only in dismissing the claims against them in their individual capacities, not in their official capacities. This is so because qualified immunity "confers immunity only from individual-capacity suits, such as suits for money damages, that have been brought against government actors." *Nereida González v. Tirado–Delgado,* 990 F.2d 701, 705 (1st Cir.1993). Qualified immunity is inapplicable to a governmental actor sued in his official capacity because an "official capacity suit is, in reality, a suit against the governmental entity, [and] not against the governmental actor." *Id.; see generally Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1482 (9th Cir.1993)("A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983."); *Walsh v. City of Auburn,* 942 F.Supp. 788, 800 (N.D.N.Y.1996).