# United States Court of Appeals
## For the First Circuit

No. 09-2531

GIL A. RODRÍGUEZ-RAMOS,

Plaintiff, Appellant,

v.

RUBÉN A. HERNÁNDEZ-GREGORAT; SANTOS M. DELGADO-MARRERO;
GLADYS FUENTES-CRUZ; JUDITH MORALES-MORALES,

Defendants, Appellees,

INSURANCE COMPANY A, B, C,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Carlos A. Del Valle Cruz, with whom Eileen Landrón
Guardiola, Eduardo Vera Ramirez and Landrón & Vera, L.L.P. were
on brief, for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, with whom Irene S. Soroeta-Kodesh,
Solicitor General, Leticia Casalduc-Rabell, Deputy Solicitor
General and Zaira Z. Girón-Anadón, Deputy Solicitor General were
on brief, for appellee Rubén A. Hernández-Gregorat and for
appellees Santos M. Delgado-Marrero, Gladys Fuentes-Cruz and
Judith Morales-Morales in their individual capacities.
Francisco J. Amundaray, with whom Eric R. Ronda and Mercado
& Soto, PSC, were on brief, for appellees Santos M. Delgado-

Marrero, Gladys Fuentes-Cruz and Judith Morales-Morales in their official capacities.

_____

July 12, 2012

_____

**HOWARD**, **Circuit Judge**. Plaintiff-appellant Gil A. Rodríguez-Ramos, a former trust employee of the Metropolitan Bus Authority of Puerto Rico ("MBA"), sued various public officials under 42 U.S.C. § 1983, alleging that a decision not to install him in a career attorney position in the MBA was politically motivated and was effected without due process of law, in violation of his First and Fourteenth Amendment rights. The district court granted the defendants' motion to dismiss all claims. For the reasons discussed below, we affirm in part and reverse in part. We affirm the dismissal of the due process claim as to all defendants, and as well, dismissal of the First Amendment claim as to all defendants, save for defendant Delgado. As to the First Amendment claim against Delgado, we vacate the dismissal and remand with instructions to grant plaintiff leave to amend the complaint.

## I. FACTUAL BACKGROUND

On review of this motion to dismiss, we recount the relevant facts based upon the well-pleaded allegations in the complaint. See S.E.C. v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc). We supplement that account with reference to Puerto Rico statutes and facts susceptible to judicial notice, as necessary to place the allegations in context. See Haley v. Boston, 657 F.3d 39, 44 (1st Cir. 2011).

In asserting an entitlement to a position as an "Attorney I within the MBA," the complaint alleges that Rodríguez is a long-

standing and active member of the Popular Democratic Party ("PDP").
He began his public employment with the Commonwealth of Puerto Rico
in 1991 and for the next decade he held career positions in various
government agencies.[1]  He maintained his career status while
attending law school, and he was admitted to practice law in early
2000.

That spring, after taking the pertinent competitive exam,
Rodríguez was appointed to the career position of "Attorney I" in
the Administration of Corrections ("AOC"), where he had previously
worked in non-lawyer capacities.  Approximately nine months later,
in January 2001, he was appointed to the trust position of Director
of the Office of Legal Affairs of the AOC.  According to the
plaintiff's translation, his appointment letter stated:

> This designation [to the Director of the Office
> of Legal Affairs] does not excuse you from
> complying with all the duties and
> responsibilities of the position you presently
> occupy as Attorney I in the Office of Legal
> Affairs, position in the career service to which
> you were promoted last March 1, 2000.  Your

---

[1] Under Puerto Rico's civil service laws, "career" employees
are "[t]hose employees who have been admitted into the public
service in faithful compliance with the [guidelines] established by
the body of laws in effect and which appl[y] to the recruitment and
selection processes of the career service at time of their
appointment," including the merit principle.  P.R. Laws Ann. tit.
3, § 1465(1).  Such employees are removable for "just cause" only.
Id. § 1462e(4).  "Trust" employees, in contrast, are "employees
that substantially intervene or collaborate in the formulation of
public policy, or those who directly advise or render direct
services to the head of the agency." Id. § 1465(2).  Such
employees "can be selected and removed at will." Id.

> probationary period shall not be interrupted
> while you prevail in this designation.

On May 1, 2001, the AOC Secretary favorably evaluated Rodríguez and approved his completion of the one-year probationary period for the Attorney I position, effective April 1.[2]

Two months later Rodríguez was appointed to the trust position of Deputy Administrator of Management and Administration in the AOC. He was subsequently appointed to a number of other trust positions in various agencies, including Assistant Secretary of Investigations of the Department of Corrections and Rehabilitation, Sub-Administrator of the AOC, Deputy Chief of Administration and later Chief of the Medical Emergency Corps, and Administrator of the General Services Administration (GSA). With the exception of a brief two-week interlude in September 2005 during which he was reassigned to a career position as Attorney I, Rodríguez held trust positions continuously from July 2001 until December 2008.

This period of the plaintiff's employment in trust positions coincided with PDP control of the governorship. In November 2008, however, the candidate of the New Progressive Party ("NPP") was elected governor. With the resulting transfer of power impending, the outgoing administration moved Rodríguez on December

---

[2] There is a discrepancy in the plaintiff's pleadings between the March 1, 2000 appointment date referenced in the appointment letter and the April 1, 2000 date elsewhere in the complaint. This discrepancy is not, however, material to our disposition.

15, 2008 from his trust position as Chief of the Medical Emergency Corps to a career attorney position within the GSA.[3] Two days later, on December 17, 2008, Rodríguez was appointed to the trust position of Special Assistant to the President in the Metropolitan Bus Authority, an agency of roughly 1,000 employees in which he had never previously worked. This was the position that Rodríguez held when the NPP government was installed two weeks later.

The political shift in the executive branch brought with it changes in trust position personnel throughout the government. The president of the NPP and new governor of Puerto Rico, Luis Fortuño-Burset, appointed Ruben Hernández-Gregorat as Secretary of Transportation and Public Works. Hernández, in turn, named Santos M. Delgado-Marrero as President and General Manager of the MBA.

Upon Delgado's appointment, and allegedly at Delgado's request, Rodríguez submitted a letter of resignation from his trust position as Special Assistant on January 7, 2009. In his letter, citing a provision of the Puerto Rico civil service law that entitles a departing trust employee to reclaim a career position

---

[3] This move was in apparent violation of the so-called "electoral moratorium period." The Public Service Human Resource Administration Act prohibits government authorities "from making any personnel transaction which includes the essential areas of the merit principle . . . [within] two (2) months before and two (2) months after the holding of the General Elections of Puerto Rico." P.R. Laws Ann. tit. 3, § 1462h. The Act provides that "[f]ailure to comply with this measure shall entail the voiding of the transaction thus carried out." Id. At this stage of the litigation, the parties make no arguments about the impact, if any, of this illegal 2-day appointment on the plaintiff's claims.

equivalent to the last career position that the employee had held, Rodríguez also requested that he be reinstated to an Attorney I career position. See P.R. Laws Ann. tit. 3, § 1465a. Contemporaneously with submitting this letter, Rodríguez requested a meeting with Delgado to discuss the matter. Not having received a reply, three weeks later Rodríguez submitted a second written reinstatement request to Delgado. This request also went unanswered.

Over the next few months, although remaining in his trust position, Rodríguez was gradually relieved of the duties and functions that he had performed as Special Assistant. The complaint alleges that Delgado ordered Rodríguez's internet access removed, excluded him from meetings, and severed his workload. The complaint lists numerous days between January and the end of June on which Rodríguez neither performed nor was assigned any job function whatsoever. Although he occasionally was given assignments to do legal work, in May when a union attorney referred to the plaintiff a sexual harassment dispute that had arisen in the MBA, Delgado issued orders preventing Rodríguez from handling the matter. Instead, it is alleged, throughout this period Delgado engaged outside counsel to handle this and most other legal matters at a cost of approximately $30,000 per month.

Rodríguez's request to be placed in a career position remained pending for most of the first half of 2009, although the

complaint alleges that in April Delgado did attempt to have Rodríguez transferred to another agency. In early March, Delgado's executive secretary had told Rodríguez "not to worry" because his request had been approved, but he remained in the Special Assistant position into June. On June 15, Rodríguez inquired about his status with Gladys Fuentes-Cruz, the MBA's Vice President of Management and Human Capital, in the presence of Judith Morales-Morales, Special Aide to Delgado in personnel matters. Fuentes explained that she was not working on the matter, which was being handled directly by Delgado with no involvement of Human Resources personnel.

On June 22, Rodríguez received a letter from Delgado appointing him to a career position as a Bus Terminal Administrator within the MBA, effective the first day of July. Rodríguez describes this appointment as a "demotion" to an "inferior working position to that which he is entitled to" with a salary of "$3,000/ monthly below to that which he should have been entitled." Prior to the effective date of this assignment, neither the President of the MBA nor any member of the human resources staff met with Rodríguez to discuss the assignment. Additionally, when on June 25 Rodríguez used the standard form to request a review of his personnel file, he was told, allegedly contrary to standard procedures, that he must write a letter making the request. The

complaint states that Rodríguez complied and made such a written request on June 30.

The next day, July 1, when his new duties were set to begin, Rodríguez filed this action in federal court. Invoking 42 U.S.C. § 1983, he alleged that he was denied placement in an Attorney I position in the MBA as a result of his political affiliation and without due process of law, in violation of his First and Fourteenth Amendment rights. The complaint named as defendants Hernández, Delgado, Morales and Fuentes, each in his or her individual and official capacities.

The district court dismissed the federal claims pursuant to the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and this timely appeal followed.[4]

## II. ANALYSIS

We review de novo an order of dismissal for failure to state a claim. Tambone, 597 F.3d at 438. In conducting this review, "we disregard statements in the complaint that merely offer

---

[4] The plaintiff also asserted a violation of his Fourteenth Amendment equal protection rights and invoked supplemental jurisdiction over various claims arising under the laws and constitution of Puerto Rico. The district court dismissed the equal protection claim as indistinguishable from his First Amendment political discrimination claim, see Pagán v. Calderón, 448 F.3d 16, 36-37 (1st Cir. 2006), and declined to exercise supplemental jurisdiction over the Commonwealth claims. The plaintiff does not challenge either disposition (although in his reply brief he belatedly urges that the supplemental claims be reinstated if the district court's dismissal is reversed), and we limit our review accordingly.

'legal conclusion[s] couched as . . . fact[]' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009)). The remaining, non-conclusory allegations are entitled to a presumption of truth, and we draw all reasonable inferences therefrom in the pleader's favor. See id. "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). To survive a motion to dismiss, a complaint must, in other words, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1249.

## A. Political Discrimination

It is well established that "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernández, 640 F.3d at 13 (citing, inter alia, Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990)). The parties do not dispute that the plaintiff's position as Special Assistant to the President of the MBA was a policymaking trust position for which party affiliation was an "appropriate requirement for the

effective performance of the [] office." Branti v. Finkel, 445 U.S. 507, 518 (1980). Consequently, to the extent that the plaintiff attempts to challenge the diminution of his functions and eventual transfer from that position, his claim necessarily fails. See Valdizán v. Rivera-Hernandez, 445 F.3d 63, 66 (1st Cir. 2006); Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 133 (1st Cir. 2005).

The main thrust of the political discrimination claim, however, is that the plaintiff suffered political discrimination when he was reinstated to a particular career position, when he wanted another. Specifically, he challenges his assignment to the purportedly inferior position of Bus Terminal Administrator rather than to an Attorney I position in the MBA to which he claims entitlement under Puerto Rico law. With respect to this employment action, the First Amendment's prohibition on political discrimination potentially does apply. Cf. Gaztambide-Barbosa v. Torres-Gaztambide, 902 F.2d 112, 115-16 (1st Cir. 1990) (finding First Amendment prohibition on political discrimination applicable to defendants' failure to reinstate trust employee entitled to career position under Puerto Rico civil service law).

To state an actionable claim of political discrimination, the plaintiff's complaint must plausibly allege that he is not of the defendants' political affiliation and that the defendants were aware of his affiliation. The complaint must also allege an

-10-

adverse employment action and that political affiliation was a substantial or motivating factor for the adverse action. See Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010). "Moreover, each defendant's role in the [adverse action] must be sufficiently alleged to make him or her a plausible defendant. After all, we must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Ocasio-Hernández, 640 F.3d at 16 (quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009)) (internal quotation marks omitted).

The district court correctly concluded that the plaintiff's allegations of participation are speculative and thus inadequate with respect to all of the defendants except Delgado. Liability under Section 1983 "cannot rest solely on a defendant's position of authority," Ocasio-Hernández, 640 F.3d at 16, yet that is all that the plaintiff offers as to the roles of defendants Hernández, Morales, and Fuentes in his reinstatement. The only non-conclusory factual allegations made with respect to Hernández are that he was appointed Secretary of Transportation and Public Works and that he in turn appointed Delgado to the position of President and General Manager of the MBA. As to Morales, the complaint states only that she was a special aide to Delgado and was present when the plaintiff asked Fuentes about the status of his reassignment. The plaintiff did argue in response to the motion to dismiss that Hernández and Morales have ultimate

-11-

statutory authority over personnel decisions, see Metropolitan Bus Authority Act, P.R. Laws Ann. tit. 23, §§ 601 et seq., but given that the complaint contains no allegations that these individuals actually participated in or condoned the personnel decision at issue here, it fails to render them plausible defendants. Compare Peñalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595-96 (1st Cir. 2011) (holding insufficient bald assertions that defendants, by virtue of their positions, "participated" in or "approve[d]" of adverse employment action), with Ocasio-Hernández, 640 F.3d at 16-17 (reaching opposite result where complaint detailed defendants' personal involvement).

The alleged participation of defendant Fuentes is no less speculative. The complaint indicates that Fuentes was the MBA's Vice President of Management and Human Capital, a position that might more plausibly involve her in personnel decisions relating to the reinstatement of removed trust employees. But the complaint fails to include allegations to that effect, much less allegations suggesting that Fuentes played any role specifically in the plaintiff's reinstatement. See Ayala-Rodríguez v. Rullán, 511 F.3d 232, 235-36 (1st Cir. 2007). In fact, the complaint alleges just the opposite: that Fuentes was kept out of employment decisions involving the plaintiff. As such, there is no basis from which to infer that Fuentes engaged in or "set[] in motion a series of acts" that led to the alleged adverse employment action. Sanchez, 590

-12-

F.3d at 50 (quoting <u>Gutierrez-Rodriquez</u> v. <u>Cartagena</u>, 882 F.3d 553, 561 (1st Cir. 1989)) (internal quotation marks omitted).

We turn, then, to whether the political discrimination claim survives the motion to dismiss with respect to defendant Delgado. There can be no disputing that the complaint satisfies the first two political discrimination claim elements, which incorporate an awareness by the defendant(s) that the plaintiff is of a different political persuasion. The complaint contains straightforward allegations that the plaintiff and Delgado are of competing political parties, stating that Rodríguez is a member of the PDP and each of the defendants is a member of the NPP. It also contains detailed descriptions of the plaintiff's history of trust positions held under PDP administrations and his active and visible role in party politics, from which it is plausible to infer that the defendants knew of his political affiliation.[5] <u>See</u> <u>Grajales</u> v. <u>P.R. Ports Auth.</u>, No. 11-1404, 2012 WL 2126116 (1st Cir. 2012) (plausible to infer defendants' knowledge from facts that plaintiff was placed in a "prestigious trust position by PDP hierarch under a PDP administration"); <u>see also</u> <u>Montfort-Rodríguez</u> v.

---

[5] Rodríguez asserts that in addition to a long line of trust positions under PDP administrations, he has held numerous posts within the party, including: member of the Popular Youth; member of the Autonomous Youth Movement of the PDP at the University of Puerto Rico; PDP electoral representative in various electoral units; PDP precinct president; PDP presidential delegate; president of the PDP Public Servants; and member of the PDP Governing Board. Rodríguez also alleges that he was known publicly as a PDP advocate by virtue of his regular participation in television, radio, and other media programming.

-13-

<u>Rey-Hernández</u>, 504 F.3d 221, 225-26 (1st Cir. 2007) (finding that defendant's knowledge that plaintiffs were trust employees under prior party's administration was circumstantial evidence that defendant was aware of political affiliation).

Taken as whole, the complaint also adequately alleges Delgado's involvement in the decision to assign the plaintiff as a Bus Terminal Administrator. We have noted that Fuentes was not involved in the plaintiff's reinstatement to a career position because, according to the complaint, Delgado took the matter into his own hands. The plaintiff alleges that he was told that Delgado was directly handling his reinstatement request, and his inquiries into the status of that request were repeatedly directed back to Delgado personally. Accepting these well-pleaded facts as true, they give rise to the inference that Delgado was involved in, if not directly responsible for, the reinstatement decision.

"The requirement of plausibility on a motion to dismiss under Rule 12(b)(6) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct].'" <u>Ocasio-Hernández</u>, 640 F.3d at 17 (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 556 (2007)). Under Puerto Rico law, trust employees who were previously in the career service are eligible to be reinstated as career employees. An "employee[] with regular status in the career service who move[s] to the confidential service, shall have the absolute right to be reinstated in a position equal or similar to the last job [he] held

-14-

within the career service," and "is entitled to all benefits in terms of classification and salary that have been extended to the career job they held during the term in which they served in the confidential service."  P.R. Laws Ann. tit. 3, § 1465a; see also Colón-Santiago v. Rosario, 438 F.3d 101, 108-109 (1st Cir. 2006). This "entitlement" is at the heart of Rodriguez' claim.

Rodríguez asserts that the Bus Terminal Administrator position to which he was assigned is inferior to an Attorney I position within the MBA to which he claims entitlement and that his placement therefore effectively constituted a demotion.  Cf. Gaztambide-Barbosa, 902 F.2d at 116 (reasoning that refusal to reinstate trust employee in career position "amounted, functionally, to a dismissal from the agency").

Defendant Delgado does not dispute that demotions fall within the scope of employment decisions subject to First Amendment scrutiny.  See e.g., Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101 (1st Cir. 1997); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705-706 (1st Cir. 1993).  He maintains, however, that the complaint is devoid of factual allegations sufficient to show political motivation, as well as of allegations that the plaintiff was deprived of rank or salary as a career employee and thus fails to support the inference that a demotion occurred.  See Acosta-Orozco, 132 F.3d at 101 (defining demotions as "'involv[ing] reductions in pay and official rank.'" (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 n.8 (1st Cir. 1989))).

This case is far from the common political retaliation claim since Rodriguez was not in fact terminated from employment as a career employee. His claim is that state law gave him a right to a better career employee position and Delgado denied him that. A causally motivating factor in that decision by Delgado, he asserts, was retaliation for his political beliefs and though he was not deprived of all employment, he asserts that his First Amendment rights extend this far.

Whether or not he has such an entitlement under state law (on the law or the facts) is a matter which is unclear, as are the contours of such an entitlement, if any. Even if he did have a state law claim on the attorney's job, this panel of judges is divided as to whether his complaint passes muster under Iqbal, including as to the allegations of causation and political animus. We are mindful that Iqbal was decided only weeks before this complaint was filed, and that there may be further facts which may enhance the pleadings and elucidate the theory advanced. As this court commented in Peñalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 597 (1st Cir. 2011), another political discrimination case: "But Twombley and Iqbal are relatively recent; developing a workable distinction between "fact" and speculation is still a work in progress."

In Peñalbert, we affirmed the dismissal as to certain named defendants but vacated dismissal of the entire case to allow plaintiff leave to amend. Id. It is within the power of a federal

-16-

appellate court to do so when doing so is in the interests of justice, as set forth in Peñalbert and Rivera-Gomez v. Castro, 843 F.2d 631 (1st Cir. 1988), and the cases cited therein. We think it appropriate under our precedent to vacate the dismissal as to defendant Delgado only and to remand with instructions to allow plaintiff leave to amend as to Delgado.

## B. Procedural Due Process

Rodríguez argues that in addition to suffering political discrimination, he was denied his substantive due process rights when he was deprived of his property interest in a career position equivalent to his former attorney position without the benefit of a "pre-demotion" hearing. In response, Delgado[6] asserts that the plaintiff never completed his probationary period and thus had no property interest in a career position; in any event, Delgado argues, he is entitled to qualified immunity because a reasonable official could have concluded that the plaintiff had no right to reinstatement. We need not address the viability of these arguments in relation to the due process claim, because the plaintiff has failed to demonstrate that Puerto Rico post-deprivation remedies are constitutionally inadequate.

As mentioned, Rodríguez asserts that Delgado violated his due process rights by denying him a "pre-demotion" hearing prior to

---

[6] As with the First Amendment claim, the complaint fails to allege sufficient personal involvement of any defendant except Delgado in the conduct alleged to constitute a due process violation.

placing him in a position other than the attorney position to which he claims entitlement. What Rodríguez terms a "demotion," however, is not a demotion in the classic sense: he was not removed from, but rather seeks an affirmative reassignment to, a position that he has not held before and in which his alleged property interest is contested. Thus, while under <u>Loudermill</u> and its progeny, <u>see, e.g.</u>, <u>Cleveland Bd. Of Educ.</u> v. <u>Loudermill</u>, 470 U.S. 532, 538 (1985); <u>Jirau-Bernal</u> v. <u>Agrait</u>, 37 F.3d 1, 5 (1st Cir. 1994), an employee's right to a prior hearing may extend to demotions from currently held positions, that is not this situation. Indeed, we have previously held that post-deprivation procedures available under Puerto Rico law are sufficient to vindicate employee rights when a former trust employee claims that she suffered salary and benefit deprivations as a result of her reassignment to a career position. <u>See</u> <u>Maymí</u> v. <u>P.R. Ports Auth.</u>, 515 F.3d 20, 30 (1st Cir. 2008) (citing, <u>inter alia</u>, <u>Amsden</u> v. <u>Moran</u>, 902 F.2d 748, 755 (1st Cir. 1990)); <u>see also</u> P.R. Laws Ann. tit. 3, §§ 1468 <u>et seq</u>. The plaintiff makes no effort to explain why those procedures are inadequate here. Under these circumstances, resort to available Puerto Rico remedies provides all the process that is due.

## III. CONCLUSION

We **affirm** the district court's order dismissing the federal claims with prejudice, as well as the dismissal of the supplemental claims without prejudice, as to all defendants save for Delgado. As to Delgado, the dismissal is vacated only as to

the First Amendment claim.  The case is remanded for further proceedings consistent with this opinion.

The parties shall bear their own costs.