Yamilka **GARCÍA-MATOS**,
et al, Plaintiffs,

v.

Eduardo **BHATIA-GAUTIER**,
et al, Defendants.

**CIV. NO. 13-1384 (PG)**

United States District Court,
D. Puerto Rico.

Signed January 15, 2016.

Fernando Cuevas–Lugo ("Cuevas"), Marie Peralta–Ramirez ("Peralta"), Miguel Colon–Martinez ("Colon–Martinez"), Lixmarie Gonzalez–Hernandez ("Lizmarie"), Marilie Gonzalez–Hernandez ("Marilie"), Adrian Melendez–Zeno ("Melendez–Zeno") and Jennifer Quiñones–Velez ("Quiñones–Velez") filed the above-captioned claim. See Docket No. 1. On January 13, 2014, the plaintiffs filed an amended complaint against Eduardo Bhatia–Gautier ("Bhatia"), in his personal capacity and his official capacity as President of the Commonwealth of Puerto Rico's Senate; Denisse M. Rivera–Gonzalez ("Rivera–Gonzalez"), in her individual capacity and her official capacity as Human Resources Director of the Commonwealth of Puerto Rico's Senate; Tania Barbarrosa–Ortiz ("Barbarrosa"), in her individual capacity and her official capacity as Secretary of the Commonwealth of Puerto Rico's Senate; Luis A. Ramos–Rivera ("Ramos–Rivera"), in his individual capacity and his official capacity as Sergeant of Arms of the Commonwealth of Puerto Rico's Senate; Jose Hernandez–Arbelo ("Hernandez–Arbelo"), in his individual capacity and his official capacity as Secretary of Administration of the Commonwealth of Puerto Rico's Senate; Juan Vazquez–Lopez ("Vazquez–Lopez"), in his individual capacity and his official capacity as Director of Auxiliary Services of the Commonwealth of Puerto Rico's Senate; Maritza Alejandro–Chevres ("Alejandro–Chevres"), in her personal capacity and her official capacity as Administrator of the Office of the President of the Commonwealth of Puerto Rico's Senate. *See* Docket No. 95 in Civil Case No. 13–1296(PG).

David R. Rodriguez-Burns, Eliezer Alberto Aldarondo-Lopez, Eliezer Aldarondo-Ortiz, Sheila J. Torres-Delgado, Ivan M. Castro-Ortiz, Aldarondo & Lopez Bras, PSC, Guaynabo, PR, for Plaintiffs.

Idza Diaz-Rivera, P. R. Department of Justice, Jose L. Nieto-Mingo, Nieto Law Offices, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

JUAN M. PEREZ–GIMENEZ,
UNITED STATES DISTRICT JUDGE

On May 15, 2013, plaintiffs Yamilka Garcia–Matos ("Garcia–Matos"), Ricardo Casellas–Morales ("Casellas"), Carlos Cotto–Roman ("Cotto"), Gretchen Medina–Fuentes ("Medina"), Nahir Arocho–Schmidt ("Arocho"), Emmy Hernandez–Rivera ("Hernandez–Rivera"), Evelyn Vazquez–Perez ("Vazquez–Perez"), Lourdes Morales–Morales ("Morales"),

All of the plaintiffs claim they were terminated from their employment at the Senate of the Commonwealth of Puerto Rico because of their political affiliation in

violation of the First Amendment to the United States Constitution. They also claim their contracts were not renewed for the same reasons. Plaintiffs Garcia–Matos, Casellas and Cotto ("the Due Process plaintiffs") also raise claims of violations to their due process rights under the Fourteenth Amendment to the United States Constitution. These plaintiffs sustain they were terminated from their jobs on January 15, 2013, some weeks before the end of their term appointments expiring on January 31, 2013. The Due Process plaintiffs claim they were not afforded their due process rights prior to termination despite having a property interest in their positions. They all now seek compensatory and punitive damages, as well as declaratory and injunctive relief and attorney fees pursuant to 42 U.S.C. §§ 1983, 1988. The plaintiffs additionally invoke the court's supplemental jurisdiction over the claims under the laws and Constitution of Puerto Rico, in particular, Public Service Personnel Laws and Articles 1802 and 1803 of the Puerto Rico Civil Code.

The following background is based on admitted allegations, unless so specified.

The plaintiffs in this case are affiliated with the New Progressive Party ("NPP"), whereas the defendants are all admittedly well-known members of the opposing party, the Popular Democratic Party ("PDP"). *See* Dockets No. 95, 122 in Civil Case No. 13–1296(PG). The NPP controlled the Senate from January 2, 2005 until December 31, 2012. It also controlled the Executive Branch during the 2009–2012 term. As a result of the General Elections held on November 6, 2012, the PDP gained a majority of the seats in the Senate. On or about mid-late November of 2012, a transition committee was established to provide for the transition of the presidency of the Senate from the NPP to the PDP. The newly-elected members of the Senate were

sworn in on January 2nd, 2013. Notwithstanding, on that same date, Ms. Brunilda Ortiz–Rodriguez, at the time acting as interim President of the Senate, provided the plaintiffs, as well as other Senate employees in administrative positions, with term appointments until January 31, 2013.

Bhatia was the PDP Senate candidate that received the most electoral votes and on January 14, 2013, he became the President of the Senate. As such, Bhatia is the nominating authority of the Senate. Section 6.1 of the Senate Regulations establishes the duties and responsibilities of the President of the Senate, including being "in charge of the administrative affairs of the Senate" including the "selection, appointment, classification, promotion, retribution, discipline, cessation, destitution, sanctions of the personnel [ . . . ]." This section also states that "[t]he President can delegate in the pertinent officials any of these endeavors by way of an order to that effect." *See* Dockets No. 95, 122 in . 1(PG), ¶¶ 126. Bhatia thus appointed a majority of the members of the transition committee. Co-defendants Rivera–Gonzalez, Barbarrosa, Ramos–Rivera, Hernandez–Arbelo, Vazquez–Lopez and Alejandro–Chevres were admittedly appointed to their positions by Bhatia; enjoy the full trust of and are loyal to Bhatia and the PDP; are well-known and loyal members of the PDP; and, at all times relevant and material hereto, were acting under color of state law.

The defendants admit that political affiliation is not an appropriate requirement of plaintiffs' positions and that the Senate is an entity involving numerous politicians where the atmosphere is generally politically charged and highly partisan, particularly in the days leading up to elections and in the months that follow such elections. *See* Dockets No. 95, 122 in Civil Case No. 13–1296(PG), ¶¶ 59, 69.

On or about January 15, 2013, co-defendants Rivera–Gonzalez and Ramos–Rivera, Human Resources Director and Sergeant of Arms, respectively, through another individual, instructed some plaintiffs to go to the Human Resources office, where they personally provided these individuals with termination letters signed by co-defendant Barbarrosa. *Id.* at ¶¶ 117–118. The letters provided for the immediate termination from employment of these employees—including the plaintiffs to this action—and failed to notify them of their right to a pre-termination hearing or of the reasons for their termination. *Id.* at ¶¶ 122. This action was taken despite the fact that all of the employees terminated on January 15, 2013 had been afforded term appointments until January 31, 2013. *Id.* at ¶¶ 123. Another similar, yet independent, incident involving another group of employees affiliated with or perceived as being affiliated with the NPP, including plaintiffs to this action, occurred on or about January 30, 2013. These individuals were summoned by Vazquez–Lopez to a meeting where there were other individuals present, including newly appointed PDP-affiliated supervisors. Vazquez–Lopez told them that he is grateful for their work but that their contracts would not be extended beyond January 31, 2013. *Id.* at ¶¶ 145.

Similar allegations are raised in the complaint with regard to co-defendant Hernandez–Arbelo, though not admitted. *See* Docket No. 95 in Civil Case No. 13–1296(PG), ¶¶ 152–153. As to co-defendant Alejandro–Chevres, the allegations are limited to claiming that she worked in connection with the rest of the defendants in the determination of the employees that would be terminated, and that she made disparaging comments about another employee. *Id.* ¶¶ 95, 171. The same are not admitted.

The court finally notes that it is uncontested that the defendants did not discipline the plaintiffs or issue a reprimand related to the performance of their duties prior to their dismissal. *See* Dockets No. 95, 122 in Civil Case No. 13–1296(PG), at ¶¶ 196, 213, 229, 245, 261, 275, 289, 305, 322, 337, 354, 372, 389, 403, 418.

## I. STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Prescott v. Higgins,* 538 F.3d 32, 40 (1st Cir.2008) (citing *Thompson v. Coca-Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008)); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004) (stating that an issue is genuine if it can be resolved in favor of either party). In order for a

disputed fact to be considered material it must have the potential "to affect the outcome of the suit under the governing law." *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–61 (1st Cir.2000) (citing *Liberty Lobby, Inc.,* 477 U.S. at 247–248, 106 S.Ct. 2505); *Prescott,* 538 F.3d at 40 (*citing Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008)).

If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See *Suarez v. Pueblo Int'l,* 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. *See Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir.2002). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.*

## II. DISCUSSION

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (internal quotation marks omitted). To prevail in a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." *Cepero–Rivera v. Fagundo,* 414 F.3d 124, 129 (1st Cir.2005) (quoting *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir. 1996)). For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Section 1983 claims require that a plaintiff establish three elements for liability to ensue: deprivation of a right, a causal connection between the actor and the deprivation, and state action. See *Sanchez v. Pereira–Castillo,* 590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." *Concepcion v. Municipality of Gurabo,* 558 F.Supp.2d 149, 162 (D.P.R. 2007). Moreover, a plaintiff must link

each particular defendant to the alleged violation of federal rights. See *González–Piña v. Rodríguez*, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir.1984).

## A. Due Process Claims

 "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." *Figueroa–Serrano v. Ramos–Alverio*, 221 F.3d 1, 5–6 (1st Cir.2000) (*citing Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 263 (1st Cir.1987). "In a due process claim stemming from the termination of employment, 'a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed.'" *Acevedo–Feliciano v. Ruiz–Hernandez*, 447 F.3d 115, 121 (1st Cir.2006) (*quoting Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir.2002). "It is well established, both in Puerto Rico and in federal law, that a person has secured a property right in his employment if he has an expectation of continuity in said employment." *Quiles Rodriguez v. Calderon*, 172 F.Supp.2d 334, 344 (D.P.R.2001).

Only plaintiffs Garcia–Matos, Casellas and Cotto ("the Due Process plaintiffs") have raised procedural due process claims. They were dismissed on January 15, 2013 despite having term appointments that expired on January 31, 2013. It is uncontested that they were not notified of any due process rights or afforded pre-termination hearings prior to their removal before the expiration of their contracts. At the time of their termination, Garcia–Matos was a Messenger, Casellas worked in the Senate's Internal Security, and Cotto was an usher. See Docket No. 95, 122 in Civil Case 13–1296(PG), ¶¶ 186, 202.

In their motions for summary judgment, the defendants request the dismissal of these plaintiffs' procedural due process claims under the Fourteenth Amendment. See Dockets No. 28, 31. The defendants argue that the plaintiffs were classified as "trust", as opposed to "transitory" employees, and thus had no constitutionally protected interest in their position.

 On the one hand, "trust/confidential/policymaking employees do not possess a property right." *Roman v. Delgado Altieri*, 390 F.Supp.2d 94, 107–08 (D.P.R.2005). "Puerto Rico 'trust' employees participate in policymaking and can be hired and fired on political grounds." *Medina–Velazquez v. Hernandez–Gregorat*, 767 F.3d 103, 110 (1st Cir.2014) (*citing Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 430 n. 7 (1st Cir.2010)). The First Circuit has "recognized that political affiliation is an appropriate requirement for ... effective performance in such trust positions." *Medina–Velazquez*, 767 F.3d at 110 (internal citations omitted).

 Notwithstanding, "[w]hether a government position is trust/confidential/policymaking does not depend upon such loose-fitting labels as substance of the duties inherent in the position itself." *Roman v. Delgado Altieri*, 390 F.Supp.2d 94, 105 (D.P.R.2005) (*citing Ortiz–Pinero v. Rivera–Arroyo*, 84 F.3d 7, 12 (1st Cir. 1996))). The First Circuit has held that the designation of a position as "trust" or "career" under Puerto Rico law, although entitled to some deference, is not dispositive in determining the federal question of whether a position is afforded constitutional protection. *See Velazquez v. Mun.*

*Gov't of Catano*, 91 F.Supp.3d 176, 193 (D.P.R.2015) (citing *Duriex–Gauthier v. Lopez–Nieves*, 274 F.3d 4, 8 (1st Cir.2001), *Ruiz Casillas v. Camacho Morales*, 2004 WL 3622480 (D.P.R.2004)).

On the other hand, "the Puerto Rico Supreme Court held that a 'transitory employee' has 'a job retention expectancy only during the term of the appointment.'" *Cortes–Reyes v. Salas–Quintana*, 608 F.3d 41, 52 (1st Cir.2010) (citing *Departamento de Recursos Naturales v. Correa*, 118 D.P.R. 689 (1987)). The defendants so recognize in their motion. *See* Docket No. 28 at page 5.

 In their answer to the complaint, the defendants admitted that political affiliation *is not* an appropriate requirement of plaintiffs' positions. In their motion, the defendants do not even posit that the plaintiffs participated in any policymaking duties. The crux of their argument lies simply in the classification of their post, which as explained above, is not determinative. The defendants' failure to develop the record more fully on this subject renders their request for summary judgment on these claims to be thus **DENIED.**

In the alternative, the defendants contend that "[e]ven if these plaintiffs had a cognizable due process claim ..., they would not be due any process from any of the appearing co-defendants with the possible exception of co-defendant [Rivera–Gonzalez], who is in charge of the Human Resources Department." Docket No. 28 at page 5. In their opposition, the plaintiffs reference the fact that co-defendant Barbarrosa signed their termination letters, which failed to notify them of their right to a pre-termination hearing. It is also an uncontested fact that co-defendant Bhatia is the nominating authority of the Senate. Therefore, issues of material fact exist as to who, if anyone, ultimately owed them due process, if at all.

## B. First Amendment Claims

 The plaintiffs here bring suit for the violation of their constitutional rights under the First Amendment, which "insulates public employees who hold non-policymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." *Bergeron v. Cabral*, 560 F.3d 1, 7 (1st Cir.2009) (citing *Rutan v. Repub. Party of Ill.*, 497 U.S. 62, 74–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). In essence, "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 10 (1st Cir.2011) (citing *Rutan*, 497 U.S. at 75–76, 110 S.Ct. 2729; *Welch v. Ciampa*, 542 F.3d 927, 938–39 (1st Cir.2008)). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004) (citing *Elrod v. Burns*, 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

In their motion for summary judgment, the defendants request the dismissal of the plaintiffs' First Amendment claims. They first argue that the First Circuit has yet to address whether or not employees of the Legislative Branch are protected against political patronage in light of said Branch's political nature. *See* Docket No. 28 at pages 6–8. Despite the lack of appellate review of the defendants' creative but unavailing argument, this court has previously held that non-policymaking employees from various Senate offices were afforded constitutional protection from dismissals on the basis of political affiliation. *See Alburquerque v. Faz Alzamora*, 357

F.Supp.2d 385, 394 (D.P.R.2004). Thus, the court finds this argument meritless.

The defendants move on to explain that "[t]he hiring scheme in place at the Senate certainly allows for the use of political support as a criterion for selection." Docket No. 28 at page 8. And because the established scheme allowed the plaintiffs to be hired because of their affiliation to the NPP, the same criterion ought to be permissible for their removal as well. *See id.* at page 9. First of all, the court is not passing muster on the propriety of the process undergone for plaintiffs' selection for employment. Instead, the controversy before the court is limited to the circumstances surrounding the expiration and failure to renew their contracts. Second, adopting the defendants' argument would violate the fundamental principle that two wrongs don't make a right. As such, this argument holds no water.

 Next, the defendants contend that the plaintiffs fail to state a claim of political discrimination against the defendants. To establish a claim of political discrimination, "the workers must show that: (1) they and the defendants have 'opposing political affiliations,' (2) the defendants were aware of the workers' political affiliations, (3) an 'adverse employment action' (e.g., an employment termination) occurred, and (4) 'political affiliation was a substantial or motivating factor for the adverse employment action.'" *Ocasio–Hernandez v. Fortuño–Burset*, 777 F.3d 1, 5 (1st Cir.2015) (citations omitted) ("*Ocasio–Hernandez II*").

In the case at hand, it is uncontested that the plaintiffs and the defendants were respectively militants of opposing political parties and the plaintiffs suffered an adverse employment action. In their motion for summary judgment, the defendants do not deny the final element of the test, quite the contrary, suggest the established hiring scheme in the Senate allowed for political affiliation to motivate employment actions. Nor do the defendants set forth non-discriminatory reasons for letting the plaintiffs' contracts expire without renewing them. As a result, the only element in question is whether the plaintiffs are able to establish the defendants' knowledge of their political affiliation. To that effect, the defendants claim that the plaintiffs fall short of establishing actual knowledge on the part of the defendants.

It stems from the record that all plaintiffs are active and public supporters of the NPP. Many were polling unit officers during one or more elections, during which they claim some of the co-defendants saw them performing their duties as such. The plaintiffs also set forth evidence of statements on the part of the defendants— including a radio interview given by co-defendant Bhatia—from which a reasonable jury can infer the defendants' knowledge of the political affiliation of the employees whose contracts were not going to be renewed by the new administration. It is also an admitted allegation that the Senate is an entity involving numerous politicians where the atmosphere is generally politically charged and highly partisan, particularly in the days leading up to elections and in the months that follow such elections.

 It is well-established principle that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party." *Ocasio–Hernandez v. Fortuño–Burset*, 777 F.3d at 7; *see also Martinez–Velez v. Rey–Hernandez*, 506 F.3d 32, 44 (1st Cir.2007) (noting that a jury could reasonably infer that the defendant was aware of the plaintiff's NPP affiliation based on testimony that the plaintiff spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria). After review of the

record in the light most favorable to the plaintiffs, the court finds that the plaintiffs' evidence portrays a working community where, directly or indirectly, political affiliations were common knowledge. *See Peguero–Moronta v. Santiago,* 464 F.3d 29, 48 (1st Cir.2006) (holding reasonable jury could conclude that political affiliation of plaintiffs was sufficiently well-known that the defendants were aware of it where evidence of relatively small workplace); *see also Garcia–Gonzalez v. Puig–Morales,* 761 F.3d 81, 99 (1st Cir.2014) (genuine issue of fact as to whether defendant knew of plaintiff's political affiliation where plaintiff publicly displayed affiliation and defendant had "ready source" for such knowledge). Thus, a reasonable jury could conclude that defendants knew of plaintiffs' political affiliations.

██ Finally, the defendants Rivera–Gonzalez, Barbarrosa, Hernandez–Arbelo, Vazquez–Lopez, Alejandro–Chevere and Ramos–Rivera state in their motion (Docket No. 28) that "[w]ithout ... suggesting any liability on the part of co-defendant [Bhatia], the hard fact in this case is that said party enjoys nominating authority prerogatives and only he could legally decree plaintiffs' terminations ... or decide not to renew their appointments past their expiration date." Docket No. 28 at pages 11–12. They sustain the plaintiffs are unable to establish that their participation in the challenged employment decisions are meaningful enough to warrant the imposition of liability. *Id.* at page 19. On the other hand, in his motion, co-defendant Bhatia sustains he was not personally involved in the termination or non-renewal of the plaintiffs' employment contract. *See* Docket No. 31 at pages 4–5.

██ "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury result-

ed from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Ocasio–Hernandez,* 640 F.3d at 16 (internal citations and quotation marks omitted). "Liability under Section 1983 cannot rest solely on a defendant's position of authority...." *Rodriguez–Ramos v. Hernandez–Gregorat,* 685 F.3d 34, 41 (1st Cir.2012) (citations and quotation marks omitted). "Rather, 'only persons who were directly involved in the wrongdoing may be held liable.'" *Torres–Santiago v. Municipality of Adjuntas,* 693 F.3d 230, 239 (1st Cir.2012) (*citing Martinez–Velez,* 506 F.3d at 41)).

In the case at hand, co-defendant Bhatia was uncontestedly the nominating authority in the Senate, while some of the defendants were supervisors, key decision-makers or members of the transition committee established by the incoming PDP administration. While the parties point fingers at each other, a triable issue of fact remains as to who, if any one defendant, was responsible for the employment determinations in question.

Answering these questions call for "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts'—all tasks for the jury, not the judge." *Garcia–Gonzalez v. Puig–Morales,* 761 F.3d at 99 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rodriguez v. Municipality of San Juan,* 659 F.3d 168, 175 (1st Cir.2011)).

**C. Qualified Immunity**

██ Defendants next argue that they are entitled to qualified immunity on the grounds that they acted reasonably in the particular circumstances that they faced, especially in light of the hiring scheme

historically applied in the Senate. *See* Docket No. 28 at pages 20–22.

■■■■ "Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir.2011). The First Circuit applies a three-part test to determine whether a public official is entitled to qualified immunity, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Guillemard–Ginorio v. Contreras–Gomez*, 490 F.3d 31, 38 (1st Cir. 2007) (*quoting Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004)). If all three questions are answered in the affirmative, then qualified immunity is not available. *Mihos*, 358 F.3d at 110.

The defendants agree that the "right of a non-policy-related employee to be free from politically motivated actions is beyond dispute. . . ." Docket No. 28 at page 19. Given the court's previous discussion on plaintiffs' First Amendment and Due Process claims, there is no question that the same have been considered actionable violations for quite some time. Most of the cases cited by the court have been on the books long before the events that gave rise to the plaintiffs' complaint.

■■■■ The analysis thus turns on the objective reasonableness of the defendants' actions. "The objective reasonableness inquiry is highly fact specific, . . . and often requires [an] examination of the information possessed by the defendant officials." *Diaz–Garcia v. Surillo–Ruiz*, No. CIV. 13–1473 FAB, 113 F.Supp.3d 494, 525, 2015 WL 3866686, at *27 (D.P.R. June 23, 2015) (internal quotation marks omitted) (*citing Swain v. Spinney*, 117 F.3d 1, 9–10 (1st Cir.1997); *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009); *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir.2002)). At this juncture, the court is unable to render a determination as to qualified immunity insofar as questions of fact remain regarding the facts known to the defendants at the time of the events in question.

Consequently, the defendants' request to be shielded from suit on qualified immunity grounds is **DENIED WITHOUT PREJUDICE.**

### III. CONCLUSION

For the reasons stated above, the defendants' motions for summary judgment (Dockets No. 28, 31) are hereby **DENIED.**

**IT IS SO ORDERED.**